### DRESCHER v. UNITED STATES.

Civ. A. No. 3021.

United States District Court
W. D. New York.

Jan. 22, 1949.

Nixon, Hargrave, Middleton & Devans, Rochester, N. Y., (T. Carl Nixon, Rochester, N. Y.; Hugh Satterlee, New York City, Scott Stewart, Jr., Rochester, N. Y., of counsel), for plaintiff.

George L. Grobe, U. S. Atty., Buffalo, N. Y. (Theron LaMar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., of counsel), for defendant.

BURKE, District Judge.

Plaintiff who was 46 years old in 1939 is now and was during the tax years involved a vice-president of Bausch & Lomb Optical Company. In 1936, 1937, 1939 and 1940, the company purchased single premium retirement annuity contracts, payable when the annuitants reached the age of 65, in the names of five of its officers, including the plaintiff. Plaintiff did not include the annuity contracts as income in his tax returns filed on a cash basis for any of those years. The Government made no claim for taxes in respect of the annuities purchased in 1936 and 1937. The Commissioner assessed additional income taxes for 1939 and 1940 based on the annuities. Plaintiff paid the additional taxes and filed claims for refund, which have been rejected. He sues here to recover the amounts paid as additional taxes.

The question is whether the annuity contracts were taxable as part of the plaintiff's gross income for the years 1939 and 1940. The resolution of the board of directors passed in 1936 authorizing the company expenditure for annuities for officers provided that the proposed retirement annuities would constitute "reasonable recognition of prior services rendered" pursuant to "a plan to provide for the voluntary retirement, at the age of 65 years, of the five principal officers of the corporation who are now under that age * * *." Compensation of the plaintiff was not reduced in either of the tax years because of the payment by the company of the single premium of $5,000 for each of the annuity contracts, nor did the plaintiff have a right to elect to receive in cash the cost of the annuities. The contracts have not been delivered to the plaintiff but remain in the possession of the company, and it is not intended that they be delivered until the plaintiff reaches the age of 65. The contracts and any payments thereunder are expressly non-assignable. They have no loan value and no cash surrender value.

Being non-assignable and being retained by the company the contracts had no disposal value in the hands of the taxpayer. He received no actual economic benefit from the purchase of the contracts in the tax years in question. In assessing the deficiency for the years 1939 and 1940 the Commissioner asserted, contrary to the fact, that the taxpayer "received" the annuity contracts from the company. The taxpayer was notified that his gross income had been increased "to reflect the receipt of such contract." But even if the contracts had been received by the taxpayer, there was still lacking the element of assignability.

The Government cites Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830. In that case the taxpayer received from his employer an option to purchase from the employer stock of another corporation at a price not less than the then value of the stock. In later tax years the taxpayer exercised the opition, receiving stock the market value of which was greater than the option price. The difference between the market value of the stock and the option price was held to be compensation for services, taxable as income in the years when he received the stock. There can be no doubt that there the taxpayer received a present economic benefit. In his hands it unquestionably had a disposal value measurable by what he could have realized in profit by disposing of the stock. The Government relies in part in Ward v. Commissioner, 2 Cir., 159 F.2d 502, 504. In that case taxability of the annuity contract was upheld because the contract was assignable. There the taxpayer was "legally free to dispose of it as he could, and as he desired, unrestricted by any enforceable right of Fairchild to control his action in that regard." Moreover the policy was delivered to the taxpayer "and unconditionally placed at his disposal." He was held to be taxable for the "then assignable value of the policy." In the Ward case the court cited with approval, Oberwinder v. Commissioner, 8 Civ., 147 F.2d 255, and Hubbell v. Commissioner, 6 Cir. 150 F.2d 516, 161 A.L.R. 764. In the Oberwinder case one of the annuity policies was wholly assignable and the other was assignable except for the purpose of anticipating or transferring the right to receive annuity payments. Both policies were delivered to the taxpayers. In the Hubbell case there was no prohibition in the trust agreement against assignment of the annuity contracts or the benefits thereunder.

230

The trustee was "a mere conduit", and held the contracts for the benefit of the beneficiaries, the company having transferred to the trustee all its right, title and interest therein. Both cases are distinguishable from the one under consideration here where assignability and receipt by the taxpayer are lacking. It is worthy of note that the court in the Ward case did not cite Hackett v. Commissioner, 1 Cir., 159 F.2d 121, where the annuity contracts and the benefits therein were not assignable, although the Hackett decision preceded the Ward decision by two months. In the Ward case the court apparently considered the question of assignability as vitally important and devoted a substantial part of its discussion to that feature. If assignability were of no consequence in determining taxability, it is difficult to comprehend why the court should deal at such length with a question of no practical interest. There are other distinguishable facts in the Hackett case. The contracts were not part of a retirement pension plan. The contracts were received by the annuitants. The court there said [159 F.2d 123], "However, the receipt of the annuity contracts constituted an economic benefit conferred as additional compensation which is the equivalent of cash." The taxpayer conceded that the receipt of the contracts was the receipt of income.

The question here is not whether the annuities are taxable but whether they are taxable as part of the plaintiff's gross income in the years 1939 and 1940. The plaintiff will not reach the age of 65 until 1958, and will not until then possess or be able to derive actual economic benefit from the annuity contracts, the proceeds of which will then be taxable. Even considering the acceleration feature of the contracts in the light most favorable to the taxpayer as beneficiary, and assuming that he could, even without delivery of the contracts for endorsement, obtain benefits under the policies before he reached retirement age, he could not in any event elect to receive benefits under the contracts in the tax years in question.

The plaintiff should have judgment for the additional taxes assessed for the years 1939 and 1940 in the amount of $5,924.22, with interest from June 30th, 1944.