Estate of Boyd W. Morgan, Deceased, Eunice Thornton Morgan, Administratrix v. Commissioner. Eunice Thornton Morgan v. Commissioner.
Estate of Boyd W. Morgan v. Commissioner
Docket Nos. 12070, 12071.
United States Tax Court
1949 Tax Ct. Memo LEXIS 165; 8 T.C.M. (CCH) 567; T.C.M. (RIA) 49145; June 2, 1949
James F. Lawrence, Esq., Ritz Bldg., Tulsa, Okla., for the petitioner. John P. Higgins, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for trial, involve income tax for 1941, deficiencies having been determined as follows: Estate of Boyd
Eunice Thornton
W. Morgan, de-
Morgan, Trans-
ceased, Eunice
feree of the
Thornton Mor-
Estate of Boyd
gan, Adminis-
W. Morgan, De-
tratrix, Docket
ceased, Docket
No. 12070
No. 12071
Income tax
for 1941
$1,819.30
$1,819.30
The issues to be determined are: (1) Was *166 the deficiency against the Estate of Boyd W. Morgan, Deceased, Eunice Thornton Morgan, Administratrix, "void and barred"? (2) Did the annuity policy received by Boyd W. Morgan in 1941 constitute additional compensation to him in that year? (3) If the annuity policy in 1941 did constitute additional compensation to him in that year: (a) Was the fair market value of the policy, on the date it was delivered, $7,145? (b) Is the transferee liability of Eunice Thornton Morgan, petitioner in Docket No. 12071, limited to one-third of the amount of the deficiency? The cases were submitted on a stipulation of facts and evidence both documentary and oral. The facts as stipulated are so found. Such part thereof as it is considered necessary to set forth are included with other facts found from evidence adduced in our Findings of Fact Boyd W. Morgan, decedent herein, on March 16, 1942, filed his income tax return for 1941 with the collector of internal revenue for the district of Kentucky. It stated gross income to be $8,316.57, and did not return any amount as value of any insurance policy. Decedent was employed by Universal Oil Products Company (hereinafter sometimes referred to as Universal) *167 for about 17 years prior to September 1, 1941, as a technologist. His duties covered foreign countries as well as the United States. On August 15, 1941, a single premium Guaranteed Retirement Annuity Policy, upon application of Universal, was issued by the Manufacturers Life Insurance Company of Toronto, Canada, upon payment by Universal of a consideration of $7,145, covering the decedent. The policy was signed and sealed at its head office in Toronto on October 10, 1941. It provided for an annuity commencing on the maturity date (August 15, 1958), or, at any time prior thereto and in lieu thereof, at the joint direction of the applicant (Universal) and the annuitant (decedent). The proviso as to the amount of the annuity provided for $180.34 quarter-yearly payments, commencing August 15, 1958 (the maturity date), if the annuitant was living and the contract was in force, and continuing quarter-yearly during the guaranteed period (15 years) and thereafter until the death of the annuitant. It provided in a table of "Prior Death Benefits" that certain amounts would be paid to the annuitant's executors, administrators or assigns on due proof of death prior to the maturity date of the *168 contract. Decedent's age was shown on the contract to be 43 years. The contract also provided: "At any time after this contract has been five full years in force, subject to the conditions hereinafter specified, the Company [Manufacturers Life Insurance Co.] will make payments under one of the following optional settlements in lieu of all other benefits under this contract. Selection of such optional settlement may be made at any time after the issue of this contract. "1. LIMITED ANNUITY. "An annuity commencing at a selected date and continuing quarter-yearly until the expiration of a selected period, which shall in no event be less than five years. The amount of each quarterly-yearly payment shall be such as the amount of the Prior Death Benefit at the date selected for commencement of the annuity will purchase in accordance with the TABLE OF LIMITED ANNUITIES on this page as illustrated by Table No. 1 adjoining [below]. "2. LIFE ANNUITY WITH GUARANTEED PERIOD. "An annuity commencing at a selected date and continuing quarter-yearly during a specified guaranteed period and thereafter until the payment preceding the date of the death of the Annuitant. The amount of each *169 quarter-yearly payment under an annuity commencing on one of the dates shown in Column (A) of Table No. II adjoining [below] shall be the amount shown in Column (B) and the guaranteed period applicable thereto shall be the number of years shown in Column (C). "3. LIFE ANNUITY WITHOUT GUARANTEED PERIOD. "An annuity commencing at a selected date and continuing quarter-yearly until the payment preceding the date of the death of the Annuitant. The amount of each quarter-yearly payment under an annuity commencing on one of the dates shown in Column (A) of Table No. II adjoining [below] shall be the amount shown in Column (D). TABLE No. I. Date of Commencement
Quarter-Yearly
Quarter-Yearly
of Quarter-Yearly
Payment for
Payment for
Payments
Five Year Period
Seven Year Period
August 15th, 1946
$391.31
$287.63
August 15th, 1951
467.89
343.91
August 15th, 1956
542.17
398.51
August 15th, 1958
575.50
423.01
TABLE No. II. (A)
(B)
(D)
Quarter-
(C)
Quarter-
Date of commencement
Yearly
Guaranteed
Yearly
of Quarter-Yearly
Payments
Period
Payments
Payments
(Option 2)
(Option 2)
(Option 3)
August 15th, 1946
$ 97.26
19 years
$105.15
August 15th, 1951
125.99
18 years
140.31
August 15th, 1956
161.67
16 years
185.04
August 15th, 1958
180.34
15 years
207.91
*170 CONDITIONS "The optional retirement settlement selected shall be subject to the following conditions: - "(a) Selection of an optional settlement must be made by written request to the Company. "(b) The date selected for the commencement of an annuity shall be any date on or after the fifteenth day of August, 1946, and not later than the fifteenth day of August, 1958. "(c) If the date selected for the commencement of an annuity is other than one of those shown in the table, the amount of each quarter-yearly payment and the guaranteed period (if any) under such annuity shall be calculated on the same basis as the amounts and periods shown in the appropriate table. * * *
"(e) Before payment will be made, this contract must be either submitted to the Company and the method of settlement noted herein or surrendered in exchange for a document evidencing the method of settlement. "(f) Unless otherwise specifically stated herein payment of any annuity shall be made in the same manner and shall be subject to the terms and conditions provided on the first and second pages hereof. "(g) In the event of the dissolution of the Applicant, the right to elect any optional retirement *171 settlement then or thereafter available under this contract shall ipso facto vest solely in the Annuitant." The contract also provided that neither the annuitant nor any beneficiary could assign the annuities or other benefits payable under this contract; also that the annuities and other benefits payable under this contract were exempt from the claims of creditors of the annuitant and the beneficiaries. In transmitting the policy to the decedent in 1941, Universal used a letter which reads, in pertinent part, as follows: "The Board of Directors for sometime has had under consideration a plan to provide additional future welfare and security for certain key employees of the company in recognition of their contributions and excellent service and to provide an incentive for continued diligent effort in the future. The amount which has been allocated for the purchase of such annuities for you is Six Thousand, Six Hundred and Ninety-five Dollars, in addition to the amount of Four Hundred and Fifty Dollars, making a total of Seven Thousand, One Hundred and Forty-five Dollars. "Enclosed herewith is your policy issued by the Manufacturers Life Insurance Company in Canada, covering these *172 annuities. This policy should be carefully read so that you will fully understand its benefits and conditions. I shall be glad to discuss any features of the policy with you concerning which you may have any questions. "Please arrange to furnish to Miss Baxter, as soon as possible, due proof of age, both for yourself and of the beneficiary named in your policy as set forth in the application for the policy." Policies similar to the one here in question were made available to approximately 60 of the key employees of Universal, all of whom had served Universal for "some time." In working out the plan which resulted in delivery of the policy to decedent, the vice-president of Universal in charge of the matter took into account the fact that the employees had been serving the company for some time and were still producing wealth by continued services. Boyd Morgan had no agreement with the company for delivery of the policy. The company paid its men, including Boyd W. Morgan, substantially more than others were paying. The vice-president wished the key men to obtain consideration in addition to other compensation, so that if they found themselves out of employment or destitute they *173 would have "some bread and butter money." Funds for the purchase of these policies were accumulating from 1937 or 1938. Universal had a pension plan separate and apart from the annuity contract herein. On September 1, 1941, decedent became an employee of the Ashland Oil & Refining Co., Ashland, Kentucky. He was killed in an explosion on June 12, 1943, while an employee of Ashland Oil & Refining Co. The decedent's widow, Eunice Thornton Morgan, was appointed administratrix of the Estate of Boyd W. Morgan, Deceased, by the county court of Tulsa County, Oklahoma. Notice to creditors dated August 3, 1943, was posted and published according to law. No claim was ever filed by the Bureau of Internal Revenue with the administratrix. The Estate of Boyd W. Morgan received $7,145 from the Manufacturers Life Insurance Co., which amount constituted the total amount received by the decedent or his estate from or by reason of the policy here in question. Distributions were made to the heirs on August 30, 1944, and May 21, 1945, in the following amounts: Decedent's widow, Eunice Thornton Morgan $6,257.13; decedent's daughters, Lois and Joan and son, Maynard, $3,637.37 each. Joan is a minor under *174 guardianship in the County Court of Payne County, Oklahoma. After the distribution of August 24, 1945, all of the assets of the estate were distributed. On October 16, 1944, Eunice Thornton Morgan, as administratrix of the Estate of Boyd W. Morgan, deceased, and the Commissioner of Internal Revenue entered into an agreement extending the period of limitation on assessment of tax of Boyd W. Morgan to June 30, 1946. A copy of the revenue agent's report dated November 10, 1944, containing preliminary notification of the contemplated deficiency against the Estate of Boyd W. Morgan, Deceased, in respect to the additional compensation of decedent in 1941 was received by Eunice Thornton Morgan, as administratrix of the estate. On April 18, 1945, the administratrix filed her final report and settlement of Final Account and petitioned for her discharge as administratrix; notice was issued on the same day, and on June 1, 1945, the administratrix was discharged by the court. Eunice Thornton Morgan, as administratrix, never made written application to the Commissioner of Internal Revenue for a determination of the income tax liability of the estate for 1941, and never received a discharge *175 therefrom. On June 19, 1946, the Internal Revenue Agent in Charge in Oklahoma City mailed a registered letter to Eunice Thornton Morgan, as administratrix, and also a registered letter to her as an individual, advising her of the deficiency here under consideration. The notices of deficiency in both docket numbers determined that the value of the policy was compensation for personal services. Opinion (1) The first question for our consideration is: Was the deficiency against the Estate of Boyd W. Morgan, Deceased, Eunice Thornton Morgan, Administratrix, "void and barred"? Petitioner argues that the Commissioner failed to levy this deficiency against the administratrix of the estate before she was discharged by the county court and is therefore barred from now asserting such a deficiency. The mere fact that an administratrix has been discharged from her duties does not bar collection of taxes on income received by a decedent in his lifetime. Estate of Lee R. Farrell, 35 B.T.A. 265; Elnora C. Haag, 19 B.T.A. 982, affd., 59 Fed. (2d) 516; Helen Dean Wright, 28 B.T.A. 543; DeForest Hulburd, Exec., 21 B.T.A. 23. The *176 petitioner's particular contention, that the Commissioner is required to file claim for taxes within four months after notice given to creditors, under Oklahoma law, is erroneous. Elna S. Evans, Former Administratrix, 12 B.T.A. 334. In addition, on October 16, 1944, Eunice Thornton Morgan, as administratrix of the Estate of Boyd W. Morgan, Deceased, and the Commissioner of Internal Revenue entered into an agreement extending the period of limitation on the assessment of tax of Boyd W. Morgan to June 30, 1946. Lack of authority on her part to so agree does not appear in the record. Further, under date of November 10, 1944, as administratrix she received a copy of a revenue agent's report containing preliminary notification of the contemplated deficiency here under consideration. The fact that as administratrix she entered into an agreement with the Commissioner extending the statute of limitations on the assessment and the fact that she received notice of a contemplated deficiency long before she filed her final report and petitioned for discharge (April 18, 1945) convinces us that she not only knew of a contemplated deficiency before she closed the estate but actually *177 consented to an extension of the statute of limitations. Moreover, we note that the decedent stated in his return only $8,316.57 as gross income. If he omitted more than 25 per cent of that amount a five year statute applies to him, so that if the value of the policy received by him is found to be income in amount more than such 25 per cent, then the statute of limitations had not run at the date of the deficiency notices. Since we conclude below that the policy was income of value $7,145, it follows, for this additional reason, that the deficiencies here are not barred. Sections 275(c) and 311(b)(1) of the Internal Revenue Code. We hold that the deficiency against the Estate of Boyd W. Morgan, Deceased, Eunice Thornton Morgan, Administratrix, is not "void and barred." (2) Did the annuity here in question constitute additional compensation to the decedent in 1941? Petitioner argues, on brief, that the policy in question was a method of carrying out a group annuity plan payable on a future date. In developing her argument, she cites a portion from Section 8.05 of Vol. 1, of Mertens' Law of Federal Income Taxation, but, as we read that section, it appears to *178 be concerned with premiums paid by employer on retirement annuities as provided by section 165 of the Internal Revenue Code. Furthermore, paragraphs (5) and (6) of I.T. 3346, C.B. 1940-1, page 64, also relied on by petitioner (cited also as an authority for the portion above referred to in Mertens), has for its premise section 165 of the Internal Revenue Code. Congress has made certain provisions in regard to employees' trusts or group pension plans, and if the particular plan in question comes within certain specifications, the amounts contributed by the employer are not taxable to the employee at the time the contribution is made. Petitioner though using the expression "group pension plan" makes no argument that the plan here in question comes within section 165 of the Code. On the contrary, petitioner agreed that the pension plan of the company is not here involved. We fail to see the applicability of this portion of petitioner's argument to the facts before us. Petitioner next argues that the policy delivered to the deceased was not a bonus but an outright gift. In support of this contention, she argues the applicability of Bogardus v. Commissioner, 302 U.S. 34. *179 In the Bogardus case a different situation was found. Bogardus and several others (referred to as recipients) received a bounty from Unopco Co., the facts of the case being that in 1931 the entire stock of the Universal Company was sold to the United Gasoline Corporation. Prior to the sale, and in contemplation of it, the Unopco Co. had been organized for the purpose of acquiring, and it did acquire, certain assets of the Universal Co. of the value of over $4,000,000. Up to the time of this acquisition, the Unopco Co. had never engaged in any business activities, and thereafter its only business was the investment and management of the assets thus acquired. All the former stockholders of the Universal Co. became stockholders of Unopco Co., with the same proportionate holdings. None of them, after the sale of the Universal Co. stock, held any stock in Universal Co. or in the United Gasoline Corporation. The parties stipulated, in that case, that neither Universal Co. nor United Gasoline Corporation was under any legal or other obligation to pay the employees any additional compensation, and that the payments were not made or intended to be made by Unopco Co. or any of its stockholders *180 as payment or compensation for any services rendered or to be rendered or for any consideration given or to be given by any of the recipients of the bounty in question. It was also found as a fact that none of the three corporations or their stockholders ever made or claimed any deduction for Federal income tax purposes in respect of the payments in question; further, that the recipients of the bounty in question never were employees of the Unopco Co. or any of its stockholders. The Universal Co., in whose employ some of the recipients then were, was at the time in no way connected with the Unopco Co. or any of its stockholders. Some of the recipients had not been in the employ even of the Universal Co. for many years, and one of them never had been an employee. In the light of these and other facts the Supreme Court held that the bounty in question constituted gifts from Unopco Co. to the recipients. In our opinion, the Bogardus case is distinguishable on its facts. While it was stipulated in the Bogardus case that the payments there in question were not made for services, we can not make a like finding in the instant case. At the time the policy here involved was delivered, Universal *181 (the employer) apparently did not consider it a gift, for no such expression appears in the transmittal letter. This is a contrast to the Bogardus case where payment was called "gift or honorarium." In the Bogardus case, further, it was found as fact that Unopco Co. (the purchaser of the annuity contract) claimed no deduction for Federal income tax purposes in respect of the payment in question. No such finding can be made in the instant case as to the treatment of the payment made by Universal. In the Bogardus case, none of the recipients of the bounty had ever been employees of the Unopco Co., while in the instant case the payments in question were made to some 60 key employees of Universal, all of whom had served Universal for "some time" and were still producing wealth by continued services. Because of these differences in the facts we do not consider the Bogardus case an authority for the question we have to decide. The policy here involved was issued, in the words of the transmitting letter, "in recognition of their [employees] contributions and excellent service and to provide an incentive for continued diligent effort in the future." If Boyd W. Morgan was an employee when *182 the policy was delivered to him, it could hardly be doubted that the policy was compensation. The petitioner, after determination of the deficiency on the basis that the policy was compensation for services, has the burden of showing that it was not. On the question of compensation, time of delivery of the policy is immaterial. Not only is the record inconclusive as to when the policy was delivered, whether before or after September 1, 1941, but even if it was delivered after that date, nothing of record shows that it was not, even then, delivered in consideration of past services, even assuming that no future services were expected. No change of attitude on the part of the company is shown, nor is it suggested that the delivery, after September 1, 1941, was an error. No attempt by the company to rescind the delivery, because of Morgan's employment elsewhere, is suggested. On the contrary, the petitioner affirms intentional delivery by urging that there was a gift. It is obvious that it is not shown that the policy was not for compensation for services, in the past. The transmittal letter, as we have it before us, makes no mention of the fact that the policy was to be considered *183 a gift; rather, as above seen, the first paragraph indicates that the policy was sent (to decedent) in recognition of contributions and excellent service and to provide an incentive for continued diligent effort in the future. If delivery was during decedent's current employment by the company, before September 1, 1941, clearly gift is negatived; if it was after September 1, 1941, it could yet be the "consideration in addition to other compensation" which the vice-president had in mind. The contrary is not shown. Donative intent fails to appear. The evidence, on the other hand, tends to prove, not that a gift was made, but rather that the policy was in payment of services. The "contributions" mentioned in the letter of transmittal, considered with any services at all, tends strongly to negative the idea of gift. Decedent, as well as the other key employees to whom policies were issued at that time were employees of Universal. The decedent had worked for Universal for 17 years. Considering all the evidence, we conclude that the policy here in question is not shown not to have constituted payment for services rather than a gift. The plan involved in the instant case is in effect the *184 same as in the annuity contracts or pension plans provided for in Renton K. Brodie, 1 T.C. 275; Oberwinder v. Commissioner, 147 Fed. (2d) 255; and Hackett v. Commissioner, 159 Fed. (2d) 121. The courts determined in those cases that the recipients of the policies were taxable on the amounts expended for their benefit. Following this line of cases, we hold that the annuity policy received by the decedent in 1941 did constitute additional compensation to him in that year. We have considered Theodore B. Drescher v. United States, 84 F. Supp. 228 (U.S. Dist. Ct., Western Dist. of N. Y., Civil Action No. 3021, 1-22-49). The facts of that case are in some respects similar to the facts of the instant case, but the contracts were not delivered to the employee. In any event, we feel that the result reached there is contrary to the well established rule followed in the Brodie, Oberwinder and Hackett cases above noted. (3) Holding, as we do, that the annuity policy here in question constituted additional compensation to Boyd W. Morgan in 1941, we consider: (a) Was the fair market value of the policy, on the date it was delivered, $7,145? *185 The fact that the policy had no cash surrender value or loan value or that it was non-assignable does not preclude taxability based upon the purchase price of the policy. Renton K. Brodie, supra; Oberwinder v. Commissioner, supra; Hackett v. Commissioner, supra. In the Hackett case the annuity contract gave the annuitant the right to change the beneficiaries but denied him the right to assign, alienate or commute the contracts or any payments thereunder; neither did the contracts have any loan or cash surrender value. Nevertheless the court held that the receipt of the annuity contracts constituted an economic benefit which was equivalent of cash; further, that it was as if the employees were paid in commodities rather than in cash. The Oberwinder and Brodie cases hold that the amount expended by the corporation in the purchase of the contract constituted income to the employee. We have found as a fact that Universal paid to the Manufacturers Life Insurance Co. a consideration of $7,145 for the policy here in question. Under the authority above mentioned, we hold that the purchase price of the policy constituted its fair market value. *186 (b) The final question for our determination is whether the transferee liability of Eunice Thornton Morgan, petitioner in Docket No. 12071, is limited to one-third of the amount of the deficiency. The assets of the estate having been distributed, the respondent must assert its claim for the deficiency against the transferee in accordance with section 311 of the Internal Revenue Code. Moreover, it is well settled that the liability of transferees is joint and several and that the liability of each transferee is limited only to the value of the transferred property received by that transferee. Phillips v. Commissioner, 283 U.S. 589; Eleanor Lansburgh, Administratrix, 35 B.T.A. 928; Commercial National Bank, 36 B.T.A. 239. In accordance with the cases above cited, respondent's action in asserting the deficiency against Eunice Thornton Morgan, petitioner in Docket No. 12071, is approved. The total amount ($6,257.13) received by her from the estate is in excess of the deficiency herein. Decision will be entered for the respondent.