IRWIN B. SCHWABE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26715. Promulgated January 24, 1952.

*Benjamin Mahler, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The sole issue presented for decision concerns the question whether the petitioner is entitled to deduct the full amount it contributed to a trust to cover the cost of premiums due on insurance policies purchased to effectuate its employees' pension plan, or whether the amount of this deduction is to be reduced by the cash surrender value of a canceled policy acquired and held by the trustees of the plan, which policy was canceled when one of petitioner's employees quit her position and forfeited all benefits under the plan.

The applicable provision of the Internal Revenue Code is section 23 (p).[1] This section states as part of a general rule that if the con-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

   \*        \*        \*        \*        \*        \*        \*

    (p) CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN—

        (1) GENERAL RULE.—If contributions are paid by an employer to or under a stock

tributions are paid by an employer *to or under a stock bonus, pension, profit-sharing, or annuity plan,* or under a plan deferring the receipt of such compensation, and if the contributions are deductible under section 23 (a) as ordinary and necessary business expenses then the contributions are deductible within the limitations provided in subsection (A). We understand the requirement that the contributions be paid to or under a stock bonus, pension, profit-sharing or annuity plan to mean that in any given taxable year a taxpayer-employer is not entitled to a deduction for any amount contributed which is in excess of that required by the provisions of the plan [with the exception of the carry-over provisions of clause (iv), which are not herein applicable]. *Wooster Rubber Co.,* 14 T. C. 1192, reversed on other grounds 189 F. 2d 878.

We believe that the petitioner's pension plan required the cash surrender value of the canceled policy to be applied towards the payment of premiums and that therefore the amount of the contribution called

bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows:

(i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Commissioner upon periodical examinations at not less than five-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus.

(ii) any excess over the amount allowable under clause (i) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, but if such remaining unfunded cost with respect to any three individuals is more than 50 per centum of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(iii) in lieu of the amounts allowable under (i) and (ii) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 per centum of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

(iv) Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year in accordance with the foregoing limitations.

for by the plan was the difference between the amount required to meet the cost of the plan—the cost of the premiums due—and the amount paid over to the trustees as the cash surrender value of the policy.

Looking at the provisions of the Agreement and Declaration of Trust, we see that in accordance with the provisions of the plan petitioner's employee lost all rights to any benefits thereunder when she resigned her position, because she had been under the plan for a period of less than 5 years.[2]  In the applicable revenue laws the loss of such benefits is commonly referred to as a forfeiture of employees' benefits.  The terms "forfeiture," "forfeitable," and "nonforfeitable" appear frequently in the provisions of the Code and regulations dealing with stock bonus, pension, profit-sharing or annuity plans and trust and other plans deferring compensation, and refer specifically to employees' loss of benefits under such plans.[3]  Due to such repeated use of these terms, we believe they have acquired a commonly accepted meaning of "employees' loss of benefits" when employed with reference to the subject of pension plans and pension trust.  Furthermore, such a meaning is fully in accordance with the definition of "forfeiture" given in Webster's New International Dictionary.[4]

The same section of the Agreement and Declaration of Trust, dealing with the employees' loss of benefits (the forfeiture provision), further states that any excess value of any insurance contract over and above the amount distributable to a participant on resignation or discharge "shall be surrendered for cash, and the cash so received shall go to the Trust Fund provided for under Section (1) of Article III of this Agreement to be used only as therein provided."  Section (1) of article III referred to states that contributions to the trustees and all amounts received by them under any retirement income, endowment, or annuity policy or contract not currently distributable thereunder, policy dividends received in cash, and any other trust income or receipts shall constitute the "Trust Fund" out of which the trustees were to pay current premiums, administration expenses of the trust, and any other current trust liabilities, provided, however, "that any and all dividends, *forfeitures* and other premium refunds coming into the Trust Fund shall be applied solely towards the purchase or payment of premiums on the policies under this Plan either in the year received or in the succeeding year."  [Emphasis added.]  The quoted language is the only real restriction placed on the use of funds which is contained in this section.  It appears logical that this restriction is

---

[2] See article II, section (7), of the Agreement and Declaration of Trust set out in our Findings of Fact above.

[3] Section 23 (p) (1) (D) and section 165 (c), Internal Revenue Code ; Regulations 111, sections 29.165–1, 29.165–4, 29.165–5, 29.165–6, and 29.165–7.

[4] Loss of some right, privilege, estate, honor, office, or effects, in consequence of a crime, offense, breach of condition, or other act.

the one referred to in section (7) of article II and that the use of the term "forfeiture" refers to the employees' forfeiture of benefits in accordance with section (7) of article II. Furthermore, we have been unable to find any other provision in the instrument to which the term "forfeiture" could apply. The restriction on the use of the funds received by way of forfeiture appears to be in conformity with the provisions of Regulations 111, section 29.165–1 (a), (as amended by T. D. 5422), pertaining to pension trusts, which states in the second paragraph that:

A pension plan within the meaning of section 165 (a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement. * * * Benefits are not definitely determinable if funds arising from forfeitures on termination of service, or other reason, may be used to provide increased benefits for the remaining participants instead of being used to reduce the amount of contributions by the employer.

It is indeed strange that petitioner's brief is silent with respect to the purpose of the very provision on which turns the issue presented herein and that it fails to indicate what was meant when the term "forfeiture" was employed therein. We believe that the language of the above referred to provisions of the Agreement and Declaration of Trust is clear and unambiguous and requires that amounts received by way of forfeiture be applied towards the payment of premiums, and we so hold.

The provisions of the trust instrument require that the forfeitures received be applied towards the payment of the premiums either in the year received or in the following year. Respondent interprets this requirement as meaning such receipts should be applied towards the payment of premiums in the taxable year of the petitioner in which they are paid over to the trustees unless the payments are received too late in such taxable year to be so applied, in which event they should then be used towards the payment of premiums in the following taxable year. In accordance with this interpretation, he argues that since the amount in question was received in October 1946 it should have been applied in petitioner's fiscal year ended September 30, 1947. Petitioner offered no argument contrary to this interpretation. It appears to be its position that it was not required to apply the amount received towards the payment of premiums and it has not in fact so applied this amount in the fiscal years ended September 30, 1947, 1948, or in any following years. We believe that respondent's interpretation in this respect is a reasonable one. Accordingly, we hold that the proceeds received as the cash surrender value of the canceled policy should have been applied to reduce the petitioner's contribution to the plan in the taxable year ended September 30, 1947.

Petitioner argues that, regardless of its interpretation of the pertinent provisions of the Agreement and Declaration of Trust, the trustees, in calling upon the petitioner to remit the full amount of the premiums due, had interpreted such provisions to mean that the cash surrender value was not to be applied toward the purchase of the premiums but was to be retained as an addition to the trust fund to be used at the trustees' discretion, and that this interpretation and meaning of the terms was final and conclusive in accordance with the provisions of article I, section (1) (f), which provides that all decisions of the trustees as to the facts of any case, and the meaning and intent of any of the provisions of the agreement "shall be final and conclusive."

This argument has no foundation either in fact or in law. The evidence fails to indicate the trustees did in fact interpret the pertinent provisions of the instrument, or, if they did, what that interpretation was, and as far as we know they may have very well disregarded such provisions entirely. Furthermore, as we have pointed out above, the provisions of the trust instrument in so far as they relate to the issue presented herein are clear and unambiguous, but even if this were not so, any interpretation placed upon such provisions by the trustees would not be binding upon the respondent. The serious nature of this argument is suspect in view of the fact that of the six employees of petitioner who were under the plan, three were the designated trustees, and of these, two were officers of petitioner, one being petitioner's president and owner of 90 per cent of the common stock.

We hold that the respondent did not err in reducing the amount of the deduction claimed by petitioner for its contribution to the pension plan by the amount of the cash surrender value paid over to the trustees.

*Decision will be entered under Rule 50.*