Progressive Welder Company, a Michigan corporation v. Commissioner.
Progressive Welder Co. v. Commissioner
Docket No. 35582.
United States Tax Court
1953 Tax Ct. Memo LEXIS 128; 12 T.C.M. (CCH) 1012; T.C.M. (RIA) 53303; August 31, 1953
John F. Langs, Esq., 2508 Guardian Building, Detroit, Mich., for the petitioner. Peter K. Nevitt, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in petitioner's income tax liability as follows: Year
Deficiency
1945
$3,018.77
1946
1,736.17
1947
2,218.00
Issues presented by the pleadings are whether the respondent erred (1) in disallowing as deductions under section 23 (p) of the Internal Revenue Code contributions made by petitioner to a qualified employees' profit sharing and stock bonus trust for the years 1945, 1946 and 1947 and (2) in disallowing deductions for depreciation claimed by petitioner for the years *129 1945, 1946 and 1947. At the trial and on brief, petitioner's counsel stated the only question to be considered was whether the contribution made by the company to its employees' trust for the year 1945 should be allowed as a deduction. In view of such statements and since no evidence was submitted as to any other issues, we consider that the petitioner has abandoned all issues except that relating to the contribution made in 1945. Findings of Fact Petitioner is a corporation organized under the laws of the State of Michigan with its offices at Detroit, Michigan. It is engaged in the manufacture of welding equipment and fixtures. It filed its Federal income tax return for the taxable year 1945 on the accrual basis with the collector of internal revenue at Detroit, Michigan. On December 30, 1942, the petitioner and the National Bank of Detroit entered into an employees' profit sharing and stock bonus plan, hereinafter referred to as the Plan, for the benefit of its employees. The purpose of the Plan was, first, to provide for a profit sharing program and, by deferring distribution of the profit sharing fund, to enlarge the incomes of petitioner's employees during their later years; *130 second, to provide for the ultimate distribution of the stock of the company among the employees of the company; and third, to stimulate in the employees a keener interest in the successful operation of the business of petitioner. The Plan was amended on August 17, 1944. Article IV of the Amended Plan provided as follows: "ARTICLE IV "FUND "The Company agrees that it will contribute to the fund at least eight per cent (8%) of its net profits each year before Federal Income Tax, providing that the amount of contribution shall in no event exceed fifteen per cent (15%) of the total compensation paid or accrued to the Employee beneficiaries by the Employer under the Plan. No contributions will be received from the Participants." Article V was amended to read as follows: "ARTICLE V "BENEFITS TO PARTICIPANTS "The contributions made to the Trust on behalf of the participants in the Plan shall be made by the Company on the basis of a specified per cent of the total compensation paid or accrued to said Employees from the Company which percentage formula shall apply alike to all Employee Participants, and shall not exceed fifteen per cent (15%) of the total compensation paid *131 or accrued to the Employee Participants nor be less than that per cent which will equal eight per cent (8%) of the company's net profit before Federal income taxes. The Company shall inform the Trustee of the amount of money contributed to the Plan on behalf of each Employee Participant and the Trustee shall credit such amount to the individual account of each Employee Participant." * * *
Article VII, subparagraph 18, was amended to read as follows: "ARTICLE VII "TRUSTEE'S POWERS AND DUTIES * * *
"(18) The Trustee shall once each year on March 1st allocate any funds in its hands and possession, which have not been allocated to any particular Participant, to the Participants then under the Plan in the ratio that the individual Participant's credits bear to the total contributions made to the Trust Fund by the Employer." As a result of conferences with representatives of the Bureau of Internal Revenue, petitioner adopted several amendments to the Amended Plan on October 7, 1944, as follows: "ARTICLE IV "Article IV is amended to read as follows: "The Company agrees that it will contribute to the Fund fifty per cent (50%)of the net profits of the Company before *132 Federal income taxes, as determined by a reputable auditor, on all such net profits in excess of $50,000, but not more than $10,000, and all such net profits in excess of $100,000, twenty-five per cent (25%) thereof. No contribution shall be received from the participants. "It is also provided that any forfeitures which may arise under the terms of this Trust as a result of the termination or resignation of employee beneficiaries shall be applied as a reduction of the succeeding year's contribution made by the Company to the Trust, provided, however, that all forfeitures which may have arisen prior to January 1, 1944 shall be applied and/or handled in accordance with the Trust Agreement as it existed prior to this amendment. "ARTICLE V "Article V shall be amended by amending the first paragraph to read as follows: "The contributions made to the Trust on behalf of the participants in the Plan shall be made by the Company on the basis of a specified per cent of the total compensation paid or accrued to said employees from the Company, which percentage formula shall apply alike to all employee participants and shall not exceed fifteen per cent (15%) of the basic compensation paid *133 or accrued to the employee participant. The Company shall inform the Trustee of the amount of money contributed to the Plan on behalf of each employee participant and the Trustee shall credit such amounts to the individual account of each employee participant." Thereafter, respondent on October 26, 1944, issued a ruling holding that petitioner's Plan as amended on August 17, 1944, and October 7, 1944, met the requirements of section 165 (a) of the Internal Revenue Code. The Plan was amended again on June 20, 1945, as follows: "ARTICLE V "Article V shall be amended to read as follows: "The contributions made to the Trust on behalf of the participants in the Plan shall be made by the Company on the basis of a specified per cent of the total basic compensation paid or accrued to said employees from the Company, which percentage formula shall apply alike to all employee participants and shall not exceed fifteen (15) per cent of the basic compensation paid or accrued to all the employee participants. The Company shall inform the Trustee of the amount of money contributed to the Plan on behalf of each employee participant and the Trustee shall credit such *134 amount to the individual account of each employee participant. The credits to each participant's account shall constitute the units to which the employee participant shall be entitled in accordance with the terms of this Trust, and which shall be used as the basis for determining any and all benefits which the employee participant shall receive from the terms of this Trust. * * *
"ARTICLE VII "Article VII is amended by substituting for Subparagraph (18) the following: "The Trustee shall, on or before December 30th, and after December 20th, of each year, allocate to the employee participants of the Trust in the ratio that the units standing opposite their names bears to the total units in the Trust, all unallocated funds, providing, however, that the segregated employees account shall be excluded and provided, further, however, that all interest, income and dividends shall be allocated to all units in the Fund, including the segregated employees account in the ratio that the units of each bears to the total units in the Trust Fund." * * *
On October 22, 1945, petitioner further amended Article IV, effective as of January 1, 1945, as follows: "ARTICLE IV "Article *135 IV is amended to read as follows: "The company agrees that it will contribute to this Trust, so long as this Trust is in operation, an amount equivalent to fifteen per cent (15%) of the total compensation of all employee participants under the Plan, less any forfeitures which may occur during a particular taxable year by reason of any other provisions of this Plan; provided, however, that this sum, as contributed, shall not reduce the net income of the Company, before Federal income and excess profits taxes, as determined by a reputable auditor, below SIXTY-FIVE THOUSAND AND NO/ 100 ($65,000.00) DOLLARS for any particular taxable year. No contributions shall be received from any participant. "It is also provided that any forfeiture, which may arise under the terms of this Trust as a result of the termination or resignation of employee beneficiaries, shall be applied as a reduction of the succeeding year's contribution made by the Company to the Trust; provided, however, that all forfeitures which may have arisen prior to January 1, 1944, shall be applied and/or handled in accordance with the Trust Agreement as it existed prior to the Amendment of October 7, 1944." The above amendment *136 of Article IV is the basis on which the contribution for 1945 is to be computed. The total compensation of the participants under the Plan for the year 1945 was $1,203,541.26. Fifteen per cent of the total wages of all participants under the Plan for the year 1945 amounted to $180,531.19. Forfeitures arising under Article V of the trust by reason of employee participants leaving the employment of petitioner prior to the time they had accumulated 10 years' service under the Plan amounted to $11,578.68 for the year 1944 and $28,798.01 for the year 1945. The net income before taxes and before contributions to the Plan for the year 1945 was $76,041.50. Petitioner computed its contribution to the Plan for the year 1945 to be $11,041.50 and deducted this amount from its gross income in reporting its 1945 income tax liability. Respondent held that under the terms of the Plan no deduction was allowable for 1945 and disallowed the deduction taken by petitioner for that year. Opinion The petitioner contributed $11,041.50 to its employees' profit sharing and stock bonus plan during 1945 and deducted that amount from gross income in computing its 1945 income tax liability. Petitioner *137 contends that the contributions were made in accordance with the terms of the formula embodied in the Plan and that the amount contributed is deductible under section 23 (p) (1) (C) [1] of the Internal Revenue Code. Respondent contends that under a correct interpretation of the formula petitioner was not required to contribute any amount for 1945. The sole question before us is to determine from the Plan the amount of contribution, if any, required to be made by petitioner for the year 1945. *138 The amendment in effect during the taxable year reads as follows: "ARTICLE IV "Article IV is amended to read as follows: "The company agrees that it will contribute to this Trust, so long as this Trust is in operation, an amount equivalent to fifteen per cent (15%) of the total compensation of all employee participants under the Plan, less any forfeitures which may occur during a particular taxable year by reason of any other provisions of this Plan; provided, however, that this sum, as contributed, shall not reduce the net income of the Company, before Federal income and excess profits taxes, as determined by a reputable auditor, below SIXTY-FIVE THOUSAND AND NO/ 100 ($65,000.00) DOLLARS for any particular taxable year. No contributions shall be received from any participant. "It is also provided that any forfeiture, which may arise under the terms of this Trust as a result of the termination or resignation of employee beneficiaries, shall be applied as a reduction of the succeeding year's contribution made by the Company to the Trust; provided, however, that all forfeitures which may have arisen prior to January 1, 1944, shall be applied and/or handled in accordance with *139 the Trust Agreement as it existed prior to the Amendment of October 7, 1944." Under this formula petitioner computed the contribution as follows: 15% of $1,203,541.26 equals
$180,531.19
LESS: Forfeitures for
year 1944
$11,578.68
LESS: Forfeitures for
year 1945
28,798.01
40,376.69
Total maximum permitted
contribution before ap-
plying the net profit
floor
$140,154.50
Net profit before contri-
bution
$76,041.50
Minimum net profit floor
under formula
65,000.00
Contributions required and
permitted under formula
$ 11,041.50
Respondent's computation is as
follows: 15% of $1,203,541.26 equals
$180,531.19
LESS: Forfeitures during a particu-
lar taxable year (1945) deducted
under the first paragraph of Arti-
cle IV
28,798.01
Contribution which petitioner can
make to its Plan under the first
limitation of Article IV as reduced
by forfeitures for the particular
taxable year
$151,733.18
Petitioner's 1945 profits before taxes
and contribution
$ 76,041.50
LESS: $65,000 minimum net profit
in first paragraph of Article IV
65,000.00
Contribution possible under first par-
agraph of Article IV
$ 11,041.50
LESS: Forfeitures during preceding
year (1944) as provided in second
paragraph of Article IV
11,578.68
Contribution allowable
0
*140 We will now consider the computations of the parties in the light of the provisions of Article IV. The first of such provisions was that the company (petitioner) would pay into the trust 15 per cent of the total compensation of all employee participants. Such amount for 1945 was $180,531.19. This amount was to be reduced by "any forfeitures which may occur during a particular taxable year." The "particular taxable year" in this case would be 1945. We therefore conclude that the $180,531.19 is to be reduced by 1945 forfeitures of $28,798.01, leaving the sum of $151,733.18. The next limitation was that the sum contributed could not reduce the net income of the petitioner before deduction for taxes below $65,000. In view of the fact that net income before Federal income and excess profits taxes was only $76,041.50, it was necessary to apply the second limitation and not reduce the net income below $65,000. By applying this second limitation, the contribution as provided by the first paragraph of Article IV is reduced to $11,041.50. We next consider the second paragraph of Article IV as it is obvious the parties intended it be considered in the computation or it would not have been *141 included in the Plan. The second paragraph provides that any forfeiture of a prior year "shall be applied as a reduction of the succeeding year's contribution." The prior year in the case at bar was 1944 when forfeitures totaled $11,578.68. The succeeding year is the taxable year 1945 when the contribution amounted to $11,041.50. Since the forfeitures for 1944 of $11,578.68 exceed the amount computed above under the first and second limitations of $11,041.50, it is obvious that the contribution required for 1945 under the plan is zero. To accept petitioner's computation would be to disregard the successive steps set out in the formula. The petitioner is not entitled to a deduction for any amount which is in excess of that required by the provisions of the Plan. Cf. Irwin B. Schwabe Co., 17 T.C. 1215. Petitioner contends that if its net profits in 1945 had been $295,000 before the contribution to the Plan was made, respondent would have required it to deduct the forfeitures from $180,531.19 (15 per cent of compensation) rather than to deduct the forfeitures from the difference between the net profit before the contribution and $65,000 which respondent seeks to do in the *142 case at bar and that respondent does not have the right to construe the same Plan on different occasions in different ways to his benefit. This contention by petitioner indicates it does not understand respondent's interpretation of the Plan. The Plan has three limitations. Each one must be considered according to the compensation and profits resulting from yearly operations. In the case at bar, the yearly contribution before applying the second paragraph of Article IV and after applying the two limitations of the first paragraph was $11,041.50. It was then necessary to deduct 1944 forfeitures. In the hypothetical case where profits are $295,000, it would not be necessary to apply the second limitation of the first paragraph and respondent would simply deduct the 1944 forfeitures from the 1945 contribution of $151,733.18 to arrive at the true contribution. Both computations by respondent would be consistent applications of the formula. Petitioner contends further that we should give great weight to the grantor's interpretation of the trust agreement, citing Wooster Rubber Co., 14 T.C. 1192, reversed on other grounds, 189 Fed. (2d) 878. In cases where the *143 terms are ambiguous, such a general rule should be considered, but here where a literal, logical interpretation discloses no ambiguity such a rule can not be followed. Petitioner also contends that respondent's regulations do not provide for the reduction of company contributions by forfeitures in the case of a profit sharing or stock bonus plan, but only provide that forfeitures must be used to reduce the company's contribution in the case of pension plans. It is not necessary for us to decide this question as this contention deals with the qualification of a plan and in the case at bar the Plan was approved by the respondent. When petitioner embodied such a provision in its Plan in order that the Plan might qualify under section 165 (a), it agreed that such a provision was required. As we said in McClintock-Trunkey Co., 19 T.C. 297, 303: "The fact is that the present petitioner desired that approval and obtained it by inserting the provisions in question in the trust agreement. We do not see how it can now be heard to say that express language appearing in a written document is not there, even if it be a fact that it did not need to be there otherwise." Decision *144 will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(p) Contribution of an Employer to an Employees' Trust or Annuity Plan and Compensation Under a Deferred-Payment Plan. - (1) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: * * *
(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165 (a)↩, in an amount not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. If in any taxable year beginning after December 31, 1941, there is paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 per centum of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1941, in excess of the amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 15 per centum of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. The term "stock bonus or profit-sharing trust," as used in this subparagraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarily as provided in subparagraph (A). If the contributions are made to two or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for the purposes of applying the limitations in this subparagraph.