DALLAS DENTAL LAB, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2726–77.     Filed April 12, 1979.

---

*Alfred L. Ruebel*, for the petitioner.
*Genelle F. Schlichting*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's income tax as follows:

| TYE June 30— | Deficiency |
| --- | --- |
| 1972 | $197.72 |
| 1973 | 1,140.92 |
| 1974 | 717.26 |

The issue for decision is whether compensation paid to employees whose employment terminated before the end of the taxable year is includable in determining the limitation on the deductibility of contributions to a profit-sharing plan under section 404(a)(3)(A).[1]

This is a fully stipulated case submitted under Rule 122, Tax Court Rules of Practice and Procedure. The facts as stipulated, including those set forth in the attached exhibits, are incorporated herein by this reference and found accordingly.

Petitioner Dallas Dental Lab, Inc., is a corporation which had its principal office in Dallas, Tex., at the time the petition herein was filed. It filed corporation income tax returns for its fiscal years ending June 30, 1972, 1973, and 1974, with the Internal Revenue Service Center, Austin, Tex.

Petitioner established a profit-sharing trust[2] called the Dallas Dental Lab, Inc., Profit Sharing Plan for Employees (hereinafter the plan), effective January 1, 1971.

---

[1] All references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue.

[2] Although the record does not contain any written determination by respondent that petitioner is exempt under sec. 501(a), respondent has raised no issue herein as to qualification and we, accordingly, assume, for the purposes of this case, that petitioner was exempt during each of the taxable years at issue.

The pertinent provisions of the plan[3] are as follows:

## ARTICLE I

*Definitions*

\* \* \* \* \* \* \*

3. *Employee* shall mean any employee, other than seasonal or part time employees, who is compensated by salary or wage, or by any other means of remuneration, on a consistent basis from period to period. Part time employment is defined as including all employees working less than twenty (20) hours in any calendar week. Seasonal employment is defined as including all employees working less than five (5) months in any calendar year.

\* \* \* \* \* \* \*

5. *Participant* is an Employee of the Employer [the petitioner] who is eligible to be and becomes a Participant as provided in Articles IV and V hereof.

\* \* \* \* \* \* \*

## ARTICLE IV

*Eligibility To Participate.* All Employees of the Employer, as of January 1, 1971, including any Employee who shall commence employment thereafter, excluding part time and seasonal workers, shall be immediately eligible to participate in the Plan. \* \* \*

## ARTICLE V

*Participation.* Every eligible Employee of the Employer may become a participant hereunder by filing his written application with the Trustees. The Trustees acting upon information supplied by the Employer, shall notify an Employee of his impending eligibility \* \* \* upon acceptance for employment, and his written application must be made and filed with the Trustees within thirty (30) days from the date on which he becomes eligible to participate. \* \* \*

\* \* \* \* \* \* \*

## ARTICLE VIII

*Contributions.* Contributions by the Employer shall be made out of current or accumulated profits. The formula for annual contributions shall be equal to a sum not in excess of fifteen percent (15%) of compensation of all Participants in the Plan, as the Employer, by authorization of its Board of Directors prior to the end of the taxable period for which the contribution is made, may elect to contribute to the Trust. \* \* \* The Employer's contribution each year shall be

---

[3]The plan was amended twice. The first amendment was effective retroactively to Jan. 1, 1971, and the second amendment was effective as of July 1, 1972. We have utilized the language of the original plan or the amendments as appropriate. Neither party has raised any issue or presented any argument which turns upon a choice of provisions.

credited to the account of the individual Participant in the proportion that each Participant's total compensation bears to the total compensation of all Participants during the year, as of the last day of the year, forfeitures excepted. A participant need not be employed as of the last day of the year in order to participate in the Employer's contribution for that year. Once having become a Participant in the Plan, employment during the year is sufficient to qualify for participation in the Employer's contribution for that year. * * *

## ARTICLE IX

*Forfeitures.* All forfeitures, from whatever cause, shall not act to reduce any Employer's contribution, and shall be allocated as of the end of each year to the accounts of those who were Participants in the beginning of such year and remained Participants until the end of such year. The method of allocating forfeitures shall be in the same proportion that each such Participant's total compensation for such year bears to the total compensation of all such Participants for such year.

*        *        *        *        *        *        *

## ARTICLE XII

*Death, Retirement and Severance Benefits.* * * * A Participant's right to retain the credits accumulated in the Plan from whatever source shall vest in the following percentages after the applicable period of time commencing with the effective date of the Plan, namely, January 1, 1971:

    10%  after 1 year
    20%  after 2 years
    * * *
    90%  after 9 years
    100% after 10 years, termination of employment, retirement, permanent disability or death.[4]

The fiscal year of the trust, like that of petitioner during the years at issue, was a 12-month period beginning on July 1 and ending on June 30 of the succeeding year. Petitioner made timely contributions to the trust in respect of each of its taxable years.[5]

For the taxable year ended June 30, 1972, the following individuals were employed by petitioner and received compensation as shown:

---

[4]Petitioner contends that this phrase was intended to read "termination of employment on account of retirement, disability, or death." We find it unnecessary to our decision to determine whether this contention should be sustained or rejected.

[5]The amounts of these contributions are not in dispute.

| Employee | Compensation | Length of service |
|----------|-------------|-------------------|
| A. L. Bleeker ............... | $1,516.50 | 3 months |
| R. Latterman ............... | 2,189.20 | 10 months |
| J. Hernandez ............... | 1,002.00 | 2 months |
| B. Redden ................... | 1,283.75 | 10 months |
| | 5,991.45 | |

All four of the above individuals terminated their employment with petitioner prior to the end of petitioner's taxable year. Their total compensation of $5,991.45 was used in determining the 15-percent limitation for the petitioner's contribution deduction under section 404(a)(3)(A). The four employees had $897.72 allocated to their accounts, which was forfeited to the remaining participants in the plan.

For the taxable year ended June 30, 1973, the following individuals were employed by petitioner and received compensation as shown:

| Employee | Compensation | Length of service |
|----------|-------------|-------------------|
| Duane Fisher ............... | $4,420.00 | 1 year 10 months |
| Robert McNair ............... | 566.75 | 10 months |
| R. Acosta ................... | 385.66 | 3 months |
| Carole Castleberry .......... | 137.20 | 1 month |
| | 5,509.61 | |

All four of the above individuals terminated their employment with petitioner prior to the end of petitioner's taxable year. Their total compensation of $5,509.61 was used in determining the 15-percent limitation for petitioner's contribution deduction. The four employees had $766.62 allocated to their accounts. Robert McNair, R. Acosta, and Carole Castleberry forfeited to the remaining participants the amounts allocated to their accounts. Duane Fisher was a 10-percent vested participant and received $61.58 from petitioner's contribution for that year, the balance of the amount allocated to Fisher's account from that contribution being similarly forfeited.

For the taxable year ended June 30, 1974, the following individuals were employed by petitioner and received compensation as shown:

| Employee | Compensation | Length of service |
|---|---|---|
| J. Bradford | $3,692.50 | 1 year 11 months |
| D. Fisher | 400.00 | 1 month |
| K. Downs | 675.00 | 2 months |
| G. Hargrove | 3,676.60 | 8 months |
| K. Maupin | 1,400.00 | 1 year 2 months |
| S. Smith | 547.50 | 1 month |
| W. Stotts II | 4,096.20 | 9 months |
| C. Taggart | 1,717.40 | 6 months |
| H. Willcox | 1,659.99 | 1 year 3 months |
| T. Kelso | 481.00 | 1 month |
| J. Houston | 681.00 | 2 months |
| | $19,027.19 | |

All of the above individuals terminated their employment with petitioner prior to the end of petitioner's taxable year. Their total compensation of $19,027.19 was used in determining the 15-percent limitation for petitioner's contribution deduction. These employees had $2,584.02 allocated to their accounts, which they forfeited to the remaining participants in the plan, with the exception of J. Bradford, K. Maupin, and H. Willcox, who were 10-percent vested participants and received a total of $94.50 from petitioner's contribution for that year, the balance of the amount allocated to their accounts from that contribution being similarly forfeited.

The issue for decision is whether compensation paid to employees whose services were terminated within the taxable year may be included in a determination of the limitation of the deductibility of employer contributions to a qualified (see n. 2 *supra*) profit-sharing plan under section 404(a)(3)(A).[6] That

---

[6] SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

\* \* \* \* \* \* \*

(3) STOCK BONUS AND PROFIT-SHARING TRUSTS.—

(A) LIMITS ON DEDUCTIBLE CONTRIBUTIONS.—In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a

section limits an employer's deduction for contributions to a profit-sharing trust to 15 percent of compensation paid or accrued during the taxable year "to all employees under the * * * plan." Respondent contends that, in determining the 15-percent limitation on deductible contributions, petitioner should not have included the compensation paid to certain employees whose employment terminated within the taxable years for which the contributions were made. The question turns on an interpretation of the phrase "employees under the * * * plan" as used in subsection 404(a)(3)(A).

The employees whose services were terminated can be divided into three categories. The first category consists of individuals who had been employed by petitioner for more than a year at the time their employment terminated. These employees' interests in the plan were 10-percent vested and they received part of the contribution allocated to their accounts in the year their services terminated. Respondent has, on brief, conceded that the compensation of these employees was properly included in the determination of the 15-percent limitation on contributions since these employees received some benefit from the allocation made to their accounts in the year their services terminated.

The second category consists of those individuals who were employed by petitioner for less than 5 months in a calendar year. It is clear from the terms of the plan itself that these individuals were not "employees under the * * * plan." "Employee" is defined in article I of the plan as "any employee, *other than seasonal or part time employees.*" (Emphasis added.) Seasonal employment is defined to include all employees working less than 5 months in any calendar year. Article IV provides that all employees employed as of January 1, 1971, or thereafter, *excluding part time and seasonal workers,* are eligible to participate in the plan. The language of the plan leaves no doubt

---

taxable year of the trust with respect to which the trust is exempt under section 501(a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year *to all employees under the stock bonus or profit-sharing plan.* If in any taxable year there is paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 percent of the compensation otherwise paid or accrued during such succeeding taxable year *to the beneficiaries under the plan* * * * [Emphasis added.]

as to the ineligibility of individuals employed less than 5 months to participate in the plan.[7] Where the language of a plan is clear and unambiguous, a taxpayer is not entitled to deduct a contribution greater than that allowed by the terms of the plan. *Irwin B. Schwabe Co. v. Commissioner*, 17 T.C. 1215 (1952).[8] Therefore, we hold that the respondent properly excluded the compensation paid to individuals employed by petitioner for less than 5 months in computing the limitation on deduction for contributions to the plan under section 404(a)(3)(A).

The third and final category of employees includes those who were employed for at least 5 months but less than 1 year. These employees had no vested rights in the plan. Under article VIII of the plan, a portion of petitioner's contribution for the year in which they were employed was allocated to their accounts. But, since their employment had already terminated by the end of the taxable year with respect to which the contribution was made, the subsequent allocations to their accounts were immediately forfeited[9] and, under the terms of article IX, allocated to the accounts of those who were participants at the beginning of the taxable year. The question is whether the compensation of such employees should be included for purposes of determining the 15-percent limitation in compensation "to all employees under the * * * plan" as provided in section 404(a)(3)(A).

We have found no authority directly in point.[10] Moreover, as is often the case, we have not been furnished with any clear guidance as to the meaning of the statutory language. Indeed, the statutory provision itself uses different language, i.e., "to the beneficiaries under the plan," in dealing with the treatment of excess contributions. Compare the first and second sentences of section 404(a)(3)(A), n. 6 *supra*. And the legislative history of the predecessor of section 404(a)(3)(A) which uses the same

---

[7]Theoretically, there could be distinctions among employees based upon length of service in a calendar year as against the petitioner's and the trust's fiscal year. But neither party has drawn any such distinction.

[8]See also *Progressive Welder Co. v. Commissioner*, a Memorandum Opinion of this Court dated Aug. 31, 1953.

[9]The record does not indicate the dates on which the annual contributions were paid into the trust. It is clear, however, from the terms of arts. VIII and IX of the plan that the allocation of contributions to participants' accounts could not be made before the end of the taxable year.

[10]*William M. Bailey Co. v. Commissioner*, 15 T.C. 468 (1950), affd. per curiam 192 F.2d 574 (3d Cir. 1951), cited by respondent, was decided under sec. 23(p)(1)(D), I.R.C. 1939, dealing with nonqualified plans, and turned on an interpretation of the word "nonforfeitable" as used in that subsection. It is not dispositive of the issue herein.

language (sec. 23(p), I.R.C. 1939) displays considerable ambiguity. See H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 372, 451 ("employees who are the beneficiaries of the trust"); S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 541 ("employees who are covered by the plan"), and 608 ("15 percent of the aggregate compensation of persons who are made the beneficiaries of such compensation"); H. Rept. 2586, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 701, 713 ("15 per cent of compensation otherwise paid employees").

Respondent in his regulations (sec. 1.404(a)–9(b), Income Tax Regs.), has dealt with the ambiguity of the statute and the legislative history by providing as follows:

(b) The amount of deductions under section 404(a)(3)(A) for any taxable year is subject to limitations based on the compensation otherwise paid or accrued by the employer during such taxable year to employees who are beneficiaries under the plan. For purposes of computing this limitation, the following rules are applicable:

(1) In the case of a taxable year of the employer which ends with or within a taxable year of the trust for which it is exempt under section 501(a), the limitation shall be based on the compensation otherwise paid or accrued by the employer during such taxable year of the employer to the *employees who, in such taxable year of the employer, are beneficiaries of the trust funds accumulated under the plan.* [Emphasis added.]

During the period of their employment, the employees in the third category had no interest in the trust funds because no funds had yet been allocated to their accounts. As of the end of the taxable year, they were no longer employees and, having had less than 1 year of service, it was clear that they would never derive any benefit from any allocation that might be made to their accounts, since any amount so allocated was subject to immediate forfeiture. At no time did these employees have a beneficial interest in the trust. The critical factor is not whether the interests of these employees were vested or not vested, forfeitable or nonforfeitable. Rather, it is the fact that they never had any expectation of benefiting, or indeed any right to benefit, from the funds in the trust because the only allocations which might be made on their behalf were immediately forfeited. Such an ephemeral interest in the trust was insufficient to constitute such persons "employees, who in such taxable year of the employer, are beneficiaries of the trust funds accumulated under the plan," as provided in section 1.404(a)–9(b)(1), Income Tax Regs., *supra.* As applied to the facts herein with respect to

the third category of petitioner's employees, we hold that regulation to be a reasonable interpretation of the statute.[11]

Petitioner is not entitled to increase the limitation on deductibility of contributions to the plan by providing for a merely technical allocation at the end of a year to individuals who had no interest in the trust at the end of the taxable year.

We note that this case is not governed by the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829, and we express no opinion as to whether a different result should be reached for subsequent years in light of the provisions of that act.[12]

*Decision will be entered under Rule 155.*

---

[11]Respondent argues that the result should be the same for any individual with a nonvested interest whose employment is terminated during the taxable year at issue. But, since the question is not presented herein, we take no position as to whether an individual is an "employee under the plan" if his interest was not vested during the year his employment terminated but allocations were made to his account under the plan in prior years. Similarly, we do not have before us (and express no opinion as to the status of) employees with 5 months but less than 1 year of service at the time of termination, which occurs after the close of the taxable year but before the employer's contribution and the allocation thereof is made. Cf. Rev. Rul. 65–295, 1965–2 C.B. 148.

[12]See Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829, tit. I, sec. 3(7) and 3(8) defining "participant" and "beneficiary," respectively, for the purposes of that act, and secs. 410 and 411 of the Internal Revenue Code, added by Pub. L. 93–406, establishing minimum participation and vesting standards.