## OBERWINDER v. COMMISSIONER OF INTERNAL REVENUE.
## LEE v. SAME.
### Nos. 12963, 12968.

Circuit Court of Appeals, Eighth Circuit.

Feb. 6, 1945.

Rehearing Denied Feb. 28, 1945.

256

Stanley S. Waite, of St. Louis, Mo. (Fred L. Kuhlmann, of St. Louis, Mo., on the brief), for petitioners.

Robert Koerner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The petitioners are employees of the D'Arcy Advertising Company, a Missouri corporation, which, in 1940, purchased for and delivered to each petitioner a single premium annuity contract. The Commissioner of Internal Revenue ruled that each of the petitioners realized income during the year 1940 for services rendered, measured by the cost of the annuity contract purchased by his employer and assigned to him. Petitioners seek a review of decisions of the Tax Court affirming the action of the Commissioner.

The facts are stipulated and are identical in both proceedings. On July 3, 1940, the D'Arcy Advertising Company, by resolution of its board of directors, directed its secretary to investigate different retirement benefit plans for the purpose of selecting one suitable for the company to adopt for certain of its key employees. The secretary made his report, recommending that the company purchase of insurance companies single premium deferred cash refund annuities for the employees selected by the company, on the ground that the purchase of such annuities imposed on the company no burden of administration or supervision and no obligation to continue the plan in future years. In the course of his report he said that the purpose of the plan to provide for the old age of the selected employees was to compensate them for their valuable services in the past and to provide additional inducement for them to remain with the company. On November 12, 1940, the board of directors adopted the secretary's report and directed him to purchase on behalf of the company single premium annuity contracts for twelve selected employees, among whom were the petitioners. Petitioners and other employees for whom the annuity contracts were purchased owned a large majority of the outstanding capital stock of the advertising company. Petitioners and Percy J. Orthwein, also an employee receiving an annuity under the plan, were a majority of the board of directors which authorized the purchase of the annuity contracts. The record of the meeting of the board of directors shows

that the motion to purchase the contracts was introduced by petitioner Oberwinder, seconded by petitioner Lee, and unanimously passed. The resolution directed the appropriation of $71,165 for the purchase of annuity contracts, provided that $20,115 should be applied to the purchase of the annuity for petitioner Lee and $10,700 for the purchase of the annuity for petitioner Oberwinder, and directed that the total amount appropriated should be charged against the expenses of the company for the year 1940.

The annuity contracts purchased by the advertising company had no cash surrender or loan value during the taxable year involved, nor did they participate in the surplus of the issuing company. They provided for the payment of monthly allowances for life, beginning when the annuitant reached the age of sixty years and for the payment to the executors, administrators, or assigns of annuitant of the full amount of the premium paid for the contract in the event of annuitant's death before age sixty. If, after reaching age sixty, the annuitant died before receiving the full amount of the premium paid for his contract, payment of the amount of the premium less the amount received by the annuitant was to be made to the annuitant's administrators, executors, or assigns. The applications for the annuity contracts were made by the advertising company, the annuitants signing the applications for the purpose of certifying to the statements therein contained concerning the identity and age of annuitants. The right to change the beneficiaries of the annuity contracts was reserved. The contract delivered to petitioner Oberwinder expressly permitted its assignment without the consent of the beneficiary. The contract delivered to petitioner Lee authorized its assignment except for the purpose of anticipating or transferring the right to receive annuity payments. At the time the annuity contracts were delivered to them, both annuitants were aged fifty-two years. Petitioner Lee became entitled under his contract to an annuity of $1,628.16, payable in monthly installments of $135.68, beginning eight years from the date of the contract; and petitioner, Oberwinder, to an annuity of $863.32, payable in monthly installments of $71.96, beginning eight years from the date of his contract. Under neither of the contracts was the annuitant permitted to take any amount by way of lump-sum settlement. The cost of the contracts was deducted from the income of the advertising company as a business expense in its tax return for 1940. The annuitants reported income on a cash basis, but did not include the cost of the annuity contracts. On these facts the Tax Court held that the amounts expended by the advertising company for the annuity contracts were expended for the benefit of the petitioners and were, therefore, includible in their incomes under the provisions of section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a).

For reversal of the Tax Court's decisions the petitioners assign as errors: (1) the refusal of the Commissioner and the Tax Court to follow the rulings of the Commissioner of Internal Revenue in I.T. 1810 (II-2 Cum.Bull. 70 (1923)), I.T. 2891 (XIV-1 Cum.Bull. 50 (1935)), and I.T. 3346 (1940-1 Cum.Bull. 62), in which rulings petitioners contend that the Commissioner has held that the amounts expended by an employer for the purchase of retirement annuities for his employees are not taxable as income received by the employees for the years in which the expenditures were made by the employer; and (2) the decision of the Tax Court that the amounts expended by the advertising company were taxable to petitioners in the year 1940 under the provisions of section 22(a) of the Internal Revenue Code.

The argument of petitioners on the first assignment of error is that, in the administrative rulings relied upon, the Commissioner has uniformly held in favor of the taxpayer for a period of seventeen years prior to the the purchase and delivery of the annuities in the present case, and that, by the failure of the Congress in successive tax legislation, during this period, to amend the provisions of the income tax laws regarding the question at issue, these administrative rulings have acquired the force of law, beyond the power of the Commissioner to overturn. For support of this argument reliance is placed upon Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52, in which it was held that Treasury Regulations and Interpretations, long continued without substantial change, applying to unamended or substantially re-enacted statutes, are deemed to have received Congressional approval and to have the effect of law; and upon Brewster v. Gage, 280 U.S. 327, 336,

258

50 S.Ct. 115, 117, 74 L.Ed. 457, where it is said that: "It is a settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons."

■ In appraising this argument on behalf of petitioners, it must be borne in mind that in the cases relied on for its support the Supreme Court was dealing with Treasury Decisions and Regulations interpreting doubtful statutes and not with mere rulings of the Commissioner of Internal Revenue on isolated transactions submitted to him for advice, which "have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law" (Helvering v. New York Trust Company, 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L. Ed. 1361); and also that at the time of the transactions involved in this case there was no Treasury Decision or regulation dealing specifically with the facts here involved. Brodie v. Commissioner, 1 T.C. 275. Moreover, the rulings of the Commissioner are relied on here as interpretations of section 22(a) of the Internal Revenue Code defining gross income, for the purpose of taxation, as including "gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid." Of this section the Supreme Court has said that it "indicated the intention of Congress to use its constitutional powers of income taxation to their 'full measure.'" Helvering v. Stuart, 317 U.S. 154, 169, 63 S.Ct. 140, 148, 87 L.Ed. 154. Properly speaking the rulings of the Commissioner relied on involve no construction of the section quoted. They are advisory rulings on income tax liability on specific facts. Ambiguity, if any, in the language quoted from section 22(a), justifying a resort to interpretation or construction is not readily apparent. An administrative construction of an unambiguous statute is not controlling on the courts. Walker v. United States, 8 Cir., 83 F.2d 103, 106. "Where the law is plain the subsequent re-enactment of a statute does not constitute adoption of its administrative construction." Biddle v. Commissioner, 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431. However, we find it unnecessary to express any opinion upon the validity of the Commissioner's rulings

relied on by petitioners, although, inferentially at least, they are disapproved by the decision of the Tax Court in Brodie v. Commissioner, supra. They deal with facts unlike those before us. An examination of them will show the distinction between the facts on which they are given and the facts in the present case.

In I.T. 1810 the Commissioner ruled that an employee received no taxable income in the year in which there was delivered to him by his employer a single premium bond, providing for an annual pension for the life of the employee reaching a certain age with no payment at death if the employee should die either before or after attaining the required age. The ruling of the Commissioner was that the bond did not constitute taxable income because its value was not capable of measurement at the time of its receipt. In I.T. 2981 it is held that contributions made by an employer toward the purchase of retirement annuity contracts for the benefit of his employees are not income realized by the employees in the year in which the contributions are made. No reference is made to the rights of the employees under the contracts. Apparently the contributions to the purchase of the contracts were made annually by the employer. It may be inferred that the rights of the employees to ultimate delivery of the contracts were contingent upon the continuation of the payments by the employer and upon the employee remaining in the service of his employer until he attained the required age. In I.T. 3346 the right of the employee to receive the contract was contingent upon his remaining in the service of his employer until he reached the age of sixty-five, as well as upon the continued operation of the trusts created by the employer. The contracts involved in all of these rulings differ in important respects from those with which we are concerned.

■ On petitioners' second assignment of error, we think it clear that petitioners received taxable income in the year 1940 by reason of the delivery to them of the annuity contracts purchased by their employer. Beyond doubt, the annuity contracts were, to the extent of their value when delivered to petitioners, "compensation for personal service" rendered to their employer, and, to the extent of the value in the year of delivery, constituted taxable income of the petitioners under the plain meaning of section 22(a) of the Internal

Revenue Code. Petitioners admit that the annuity contracts were not received by them as gifts from their employer. Section 165 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 165, dealing with exemptions from taxation of contributions made by employers for retirement or pension plans for their employees, has no application to the present case. Petitioners rely upon the contention that at the date of delivery, the contracts had no determinable value. Obviously, this contention is without merit. It is true that the annuity contracts had no cash surrender or loan value at the time of their delivery, and that the right of the petitioners to receive cash income under the terms of the contract was postponed for a period of eight years after their delivery. But it does not follow that the contracts were devoid of present value to petitioners on the date of delivery to them. It can not be said that on their receipt the petitioners realized no economic gain. Helvering v. Stuart, supra. On the delivery of the contracts it was certain that the petitioners or their assigns would eventually receive the full amount expended by the company in the purchase of the contracts. The lack of an existing market upon which the contracts might be readily sold is not determinative on the question of value. Whitlow v. Commissioner, 8 Cir., 82 F.2d 569, 571. "* * * the absence of market price is no barrier to valuation." Guggenheim v. Rasquin, 312 U.S. 254, 258, 61 S.Ct. 507, 509, 85 L.Ed. 813. Moreover, the question of value is a question of fact to be determined from all available evidence. The determination of the Commissioner was attended before the Tax Court by the presumption of correctness. Whitlow v. Commissioner, supra; Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864. The burden was on the petitioners. It is not sustained by a resort to the provisions of the annuity contracts alone.

The remaining question is whether the Tax Court erred in adopting the amount expended by the corporation in the purchase of the annuity contracts as the measure of the value of those contracts at the time of delivery into the hands of petitioners. We think the question is answered against petitioners' contentions by Guggenheim v. Rasquin, supra; and Powers v. Commissioner, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed 817. In the cases cited the court was dealing with the valuation of property for gift taxes, but the principles announced are applicable in the present case. The determinative facts sustaining the decision of the Tax Court are that the purchase of the annuity contracts and their delivery to and acceptance by petitioners were steps in one transaction, and that the purchase of the contracts by the employer was followed immediately by their delivery to petitioners.

The decisions of the Tax Court are affirmed.