## WARD v. COMMISSIONER OF INTERNAL REVENUE.

No. 66, Docket No. 20266.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1947.

Roswell Magill and Roswell L. Gilpatric, both of New York City (Cravath, Swaine & Moore, of New York City, of counsel), for petitioner.

Douglas W. McGregor, Asst. Atty. Gen., Sewall Key, A. F. Prescott and Melva M. Graney, Sp. Assts. to the Atty Gen., for respondent.

Before L. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The Commissioner determined a deficiency of $12,932.81 in the income taxes of the petitioner as reported by the latter for the calendar year 1941. The Tax Court redetermined the deficiency in the same amount and this petition was filed to review that decision.

The pertinent facts are not in dispute and were stated in the opinion of the Tax Court as follows: "The major portion of the facts have been stipulated. Such stipulation is adopted by us by reference and we find the facts therein set forth. They will be recited herein only so far as necessary for examination of the question, and in connection with statement of other facts found from evidence adduced.

"The petitioner filed his return, on the cash basis, for the taxable year 1941, with the collector for the district of Connecticut, at Hartford, Connecticut. He has

been since 1940 president of Fairchild Engine and Airplane Corporation (hereinafter sometimes referred to as Fairchild).

"In December 1941 Fairchild purchased for an aggregate premium of $20,000 a deferred refund annuity policy; and delivered such policy to the petitioner in 1941 as compensation for services. Although the minutes of the corporation's directors' meeting, under date of December 24, 1941, with reference to the purchase of the annuity policy, recite that the chairman, in stating the purpose of the meeting, referred to the policy to be purchased as to be non-assignable and to have no cash surrender value, the resolution adopted providing for the purchase of the annuity does not designate whether it should be non-assignable or have no cash surrender value, but provides that the annuity is to be in such form as the chairman of the board or the treasurer, after consultation with counsel, shall determine. The policy purchased was assignable, though it had no cash surrender value; and it was not until May 3, 1945, that the policy was reformed to make it non-assignable. This was after the filing of the petition herein on March 7, 1945. The petitioner was not by Fairchild given the option of receiving cash or the annuity policy.

"The $20,000 premium was paid directly by Fairchild to the insurance company issuing the policy and the petitioner did not receive the money. The petitioner was 48 years of age in December 1941, when the annuity policy was purchased by Fairchild. The policy provided, inter alia, for the payment to the petitioner of monthly payments of $133.33 each month, beginning at age 60 and continuing throughout his life, and in case of his death on or after the due date of the first annuity payment, if the sum of the annuity payments which have become due under the contract is less than the consideration paid for the policy, the insurance company will continue payment of the annuity as the payments become due to the annuitant's wife, until the total amount of annuity payments made equals the consideration. The policy also provides that in case petitioner should die before the due date of the first annuity payment, the consideration will be paid to the beneficiary (petitioner's wife) in 120 equal installments as each installment becomes due. The right to change the beneficiary is reserved to the annuitant."

If under the circumstances shown above the annuity is to be treated for tax purposes as assignable in 1941, the value of it in that year when it was received by the petitioner as additional compensation for services is includable in his gross income and is to be taken into consideration in computing his income tax for that period. Oberwinder v. Commissioner, 8 Cir., 147 F.2d 255; Hubbell v. Commissioner, 6 Cir., 150 F.2d 516, 161 A.L.R. 764. It was not in terms then restricted as to assignability, but there is evidence that the employer (Fairchild) had, through one of its principal officers, consulted an attorney as to the tax consequences of the purchase of an annuity for the petitioner and been advised that the recipient of compensation paid by means of a non-assignable policy would not be liable for income taxes based upon any value attributable to it in the year received. The effect of this advice seems to be discernable in the terms of the motion to purchase an annuity for the petitioner, as made at the director's meeting, but the resolution as voted was equivocal in that respect for it left the type of annuity to the determination of the chairman of the board or of the treasurer after consultation with counsel. The record does not show that either thereafter did consult with counsel before the policy was purchased or what was done about purchasing the contract except that the treasurer signed, in behalf of Fairchild as the purchaser, the policy which was issued and delivered to the taxpayer. At least it is clear that the attorney above mentioned was not consulted again before the purchase was made.

The statement in the above quoted part of the Tax Court's opinion that the policy was reformed on May 3, 1945 to make it non-assignable was based upon testimony to the effect that the change was then made to make the terms of the policy express "the original intention of the parties." We take the finding upon such evidence to mean that the change was not the result of a new agreement by the parties to alter the policy terms but of an agreement upon what they originally should have been and to be the

equivalent of a finding that the compensation paid the taxpayer in 1941 by means of the policy was not exactly the additional compensation Fairchild had determined then to pay him. Theoretically it was more by just the amount of any excess in value which an assignable policy would, when delivered, have over a non-assignable one.

On these facts the decisive issue presented on review is one of law. It is whether the policy which was not in 1941 in terms restricted as to assignability was nevertheless non-assignable by the taxpayer from the date of delivery because his employer had an enforceable interest in it which would have enabled Fairchild to prevent any attempt by the taxpayer to "realize" its assignable value in the taxable year of the policy's receipt by him.

We will assume for present purposes that Fairchild would have been legally entitled to recover from its employee any overpayment by way of compensation to him which depleted its assets in excess of what portion of them it had determined by appropriate corporate action to devote to that purpose. No such depletion was here shown, however, for the cost of the policy delivered was exactly the $20,000 which the corporation had voted should be used to purchase an annuity for the purchaser. Perhaps the corporation would have had an enforceable interest in the policy after delivery to the extent that it might derive any benefit from the requirement that an employee would receive and perforce retain the security of future payments which the policy provided throughout the waiting period and then get only the annuity payments, as they fell due, provided he survived the waiting period. But we need not decide that since there is nothing whatever to show that the taxpayer was bound to remain an employee of Fairchild for any definite time. Certainly his receipt of the policy in 1941 was not made contingent upon his remaining in the employment of Fairchild even throughout that taxable year and it is self-evident that he was therefore free to terminate in that year the employer-employee relationship on which alone Fairchild could have supported any claimed right to control his disposition of the policy. The suggestion that Fairchild had a vital interest in the non-assignability of the policy because that would give it a hold upon the petitioner is not persuasive. As no agreement by him to continue to work for Fairchild was made a condition upon his receipt of any policy, the terms of his employment contract were unaffected by the terms of the policy and the receipt of a non-assignable policy would have no more bound him to continue to work for Fairchild than did the receipt of an assignable one.

■ The policy, therefore, was throughout the taxable year 1941 in which the petitioner received it, rightly held for tax purposes to be the assignable annuity contract which on its face it appeared to be. The petitioner was legally free to dispose of it as he could, and as he desired, unrestricted by any enforceable right of Fairchild to control his action in that regard. Thus the petitioner became taxable in 1941 upon whatever value was, by the delivery of the policy to him in that year, then unconditionally placed at his disposal. Oberwinder v. Commissioner, supra; Hubbel v. Commissioner, supra. This was the then assignable value of the policy.

■ The remaining question is whether it was error to value the policy so received at the amount of the single premium then paid. The petitioner did not undertake to show what the value of the contract was in 1941. An annuity contract differs so materially from a non-negotiable promise to pay in a future taxable period that cases like Bedell v. Commissioner, 2 Cir., 30 F.2d 622 and Richard's Estate v. Commissioner, 2 Cir., 150 F.2d 837 are of little help either on the question of taxability or on that of valuation. It might well be that the assignable value of the contract in 1941 was less than the single premium then paid for it. The gift tax cases relied on in Oberwinder v. Commissioner, supra, dealt with value in the hands of the donor. In an income tax case the value in the hands of the recipient controls and that is really the disposal value, or as it is sometimes called, the fair market value. When there are no sales and purchases sufficient to create a market value, the amount to be included may well be called the readily realizable

value; but whatever terms are used, § 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a) makes taxable as income the value of what is the actual economic benefit received as compensation for services. Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830.

It was incumbent upon the petitioner when it was proved that some deficiency was assessable to show at least that the value placed upon the contract by the Commissioner and accepted by the Tax Court was wrong. He did not do so. In the absence of any evidence to show that the contract was not worth as much as it cost when it was received, its purchase and receipt being parts of the same transaction, the Tax Court committed no error of law in redetermining the deficiency on the basis used by the Commissioner by treating cost to the purchaser as the assignable value of the policy when received by the taxpayer.

We search the record for some evidence legally sufficient to support the action taken and when that is found our power to review a determination of value is exhausted for we do not weigh that evidence. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Webre Steib Co. v. Commissioner, 324 U.S. 164, 173, 65 S.Ct. 578, 89 L.Ed. 819.

Affirmed.