CHARLES WILSON AND GOLDIE MAE WILSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92910.   Filed November 6, 1962.

*Thomas N. Chambers, Esq.*, for the petitioners.
*Dennis J. Fox, Esq.*, for the respondent.

BRUCE, *Judge:*  Respondent has determined a deficiency in income tax for the year 1957 in the amount of $1,716.50.

The primary issue herein is whether the amount paid for an annuity for petitioner by his employer is includable in petitioners' gross income for the year 1957.  The resolution of this issue depends upon (1) whether petitioner Charles Wilson's rights in the annuity contract were nonforfeitable within the meaning of section 403(c), I.R.C. 1954, and (2) whether section 403(c), I.R.C. 1954, as applied herein, denies due process of law to petitioner in violation of the fifth amendment to the Constitution of the United States.

#### FINDINGS OF FACT.

The parties have stipulated certain facts.  The stipulation and the exhibits are incorporated herein by this reference.

Petitioners are husband and wife who reside in Shinnston, West Virginia.  They filed a joint Federal income tax return with the district director of internal revenue, Parkersburg, West Virginia, for the taxable year 1957.

Prior to the year 1957 Charles Wilson, hereinafter referred to as petitioner, had spent approximately 45 years as an employee of various oil companies.  As of the year 1957, and for many years prior thereto, he was employed by the Triad Oil Company, a subsidiary of the South Penn Oil Company, of Oil City, Pennsylvania.  He retired in 1957.

For several years prior to 1957 petitioner had been in poor health and found it difficult to continue his employment with the Triad Oil Company, hereinafter sometimes called Triad.  By the summer of that year petitioner was 65 years old.  At the time of retirement he

suffered from arthritis, stomach ulcers, a nervous condition, and hardening of the arteries which affected his vision. His retirement was forced by ill health. At the time of trial petitioner was physically incapable of making an appearance in Court.

In 1957 Triad had no regular retirement program for its employees. It adhered to the practice of considering each employee's case on its own merits when the employee was due to retire.

On August 26, 1957, Triad paid $7,930.70 as a single premium to the Aetna Life Insurance Company for a monthly annuity of $50, to be paid to petitioner during his lifetime. The application form specified that the contract would be dated September 1, 1957, and the contract was so dated. Petitioner retired from his employment about the time his employer purchased the annuity.

Neither the application for the annuity contract nor the contract itself contained any provisions or contingencies by which the rights of petitioner could be forfeited or canceled.

The annuity contract contained no provision for payment of the $50 monthly benefit to any person except petitioner, nor did it provide for any cash surrender value. The annuity contract was assignable by petitioner, provided a copy of the assignment was filed with the Aetna Life Insurance Company.

The National Bank of Commerce, of Charleston, would make no loan on the basis of the annuity policy in question, since it had no cash surrender value.

At the time of his retirement, petitioner had no knowledge of the type of retirement benefits which his employer would provide for him. He did know, from co-workers who had retired earlier, that Triad had purchased similar annuities for them. He expected that if any provision for his retirement were made by his employer it would be in the nature of an annuity. He was not consulted with respect to the annuity and had no option regarding any retirement provisions which might be made for him.

Petitioner signed the application for the annuity as "Annuitant" on August 12, 1957.

Petitioner did not object when he learned of Triad's purchase of the retirement annuity. In 1957 three monthly payments, totaling $150, were received by petitioner.

In their joint Federal income tax return for the year 1957 petitioners did not report any part of the $7,930.70 annuity premium as an item of gross income.

Respondent, in his notice of deficiency, determined that the $7,930.70 annuity premium was includable in petitioners' gross income in the year 1957.

Triad did not have a "qualified" retirement plan, and the annuity was "nonqualified" within the meaning of section 403, I.R.C. 1954.

OPINION.

Petitioner retired from the employ of Triad Oil Company in 1957 because of poor health. At the time of his retirement, Triad, which had no retirement plan for its employees, purchased a no-refund annuity from Aetna Life Insurance Company for a single premium of $7,930.70. The annuity provided for payments of $50 per month to the annuitant, petitioner, during his life. It had no cash surrender value, no survivorship or refund features, and no guarantee of payments for a term certain. The annuity was assignable, however.

The parties agree that the annuity was "nonqualified" within the meaning of section 403, I.R.C. 1954.

Section 403(c)[1] provides as follows:

(c) TAXABILITY OF BENEFICIARY UNDER A NONQUALIFIED ANNUITY.—If an annuity contract purchased by an employer for an employee is not subject to subsection (a) and the employee's rights under the contract are nonforfeitable, except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the gross income of the employee in the year in which the amount is contributed. The employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities) except that section 72(e)(3) shall not apply.

Two questions are presented for our determination. Were the petitioner's rights under the contract (annuity) nonforfeitable within the meaning of section 403(c)? Does section 403(c), as applied herein, deny due process of law to petitioner in violation of the fifth amendment to the Constitution of the United States?

In discussing the meaning of "nonforfeitable" as it is used in the sections of the Code dealing with pensions, profit-sharing plans, and annuities, this Court stated in *Irwin B. Schwabe Co.*, 17 T.C. 1215, 1220, referring specifically to section 23(p)(1)(A), I.R.C. 1939, that—

In the applicable revenue laws the loss of such benefits [under pension plan] is commonly referred to as a forfeiture of employees' benefits. The terms "forfeiture," "forfeitable," and "nonforfeitable" appear frequently in the provisions of the Code and regulations dealing with stock bonus, pension, profit-sharing or annuity plans and trust and other plans deferring compensation, and refer specifically to employees' loss of benefits under such plans. [Footnote 3 omitted.] Due to such repeated use of these terms, we believe they have acquired a commonly accepted meaning of "employees' loss of benefits" when employed with reference to the subject of pension plans and pension trust. Furthermore, such a meaning is fully in accordance with the definition of "forfeiture" given in Webster's New International Dictionary.[4]

[4] Loss of some right, privilege, estate, honor, office, or effects, in consequence of a crime, offense, breach of condition, or other act.

Petitioner argues that since "the annuitant must live to receive any benefit directly or indirectly, such annuity is forfeitable." The

---

[1] This section was originally designated 403(b), but was changed to 403(c) by the Technical Amendments Act of 1958.

answer to this argument is apparent in the statute which speaks of the nonforfeitability of an employee's *rights* under the contract. In the instant case, petitioner had a right to $50 per month during his life. There are no conditions or restrictions upon this right and no provisions the breach of which would cause him to lose such right. That the payments cease upon petitioner's death makes the rights terminable, not forfeitable. Simply stated, since there were no rights beyond petitioner's death, there were no rights which could be forfeited by death.

Section 1.403(b)–1, Income Tax Regs.,[2] provides that the definition of "nonforfeitable" is governed by the provision of section 1.402(b)–1, which includes the following language in section 1.402(b)–1(a) (2)(i):

An employee's beneficial interest in the contribution is nonforfeitable within the meaning of sections 402(b), 403(b)[3] and 404(a)(5) at the time the contribution is made if there is no contingency under the plan which may cause the employee to lose his rights in the contribution.

Section 1.402(b)–1(a)(2)(iii), Income Tax Regs., states:

The mere fact that an employee may not live to the retirement date, or may live only a short period after the retirement date, and may not be able to enjoy the receipt of annuity or pension payments, does not make his beneficial interest in the contributions made by the employer on his behalf forfeitable. If the employer's contributions have been irrevocably applied to purchase an annuity contract for the employee, or if the trustee is obligated to use the employer's contributions to provide an annuity for the employee provided only that the employee is alive on the dates the annuity payments are due, the employee's rights in the employer's contributions are nonforfeitable.

It should be noted that the above-quoted portions of sections 1.403 (b)–1 and 1.402(b)–1 were first promulgated in almost the same form in 1943 following enactment of the Revenue Act of 1942 and have been found in the applicable regulations in almost the same form since that time. Thus, in reenacting the Code provisions of the last half of section 22(b)(2)(B), I.R.C. 1939, as section 403(c) of the 1954 Code,[3] Congress, in effect, approved the regulations issued pursuant to the predecessor section and thereafter promulgated in like form under section 403(c). *Helvering* v. *Winmill*, 305 U.S. 79.

We conclude that petitioner's rights under the annuity contract were nonforfeitable within the meaning of section 403(c), I.R.C. 1954.

We agree that the termination of all benefits upon petitioner's death makes this annuity differ from any in which provision is made for payments for a term or for an amount certain despite the annuitant's death; see, e.g., *Elliott C. Morse*, 17 T.C. 1244, affd. 202 F. 2d 69 (C.A. 2, 1953); *Renton K. Brodie*, 1 T.C. 275; but the distinction

[2] See footnote 1.
[3] See footnote 1.

goes only to value or the amount to be included in income and not forfeitability.

The statute provides that it is the amount contributed by the employer "on or after such [the employee's] rights become nonforfeitable" which is includable in the gross income in the year of the contribution. Payment for the policy was made on August 26, 1957, whereas the annuity was issued on September 1, 1957. There is, however, no indication that an element of forfeitability existed between the date of payment by the employer and the issuance of the policy. Accordingly, we need not reach the question whether the date of contribution and nonforfeitability coincided. Even if we reached that question, however, no change in the conclusion herein would appear to be required. *Elliott C. Morse, supra.*

The second issue raised by the petitioner challenges the constitutionality of section 403(c). Petitioner argues that there may properly be included in his income only the fair market value of what he received, and adds:

To conclusively measure the value of property on the basis of the purchase price paid by another person, not the taxpayer, and impose a tax thereon as has been done under section 403(c) of the Code, is so arbitrary and unreasonable as to amount to a denial of due process of law within the meaning of the Fifth Amendment to the Constitution of the United States of America.

We agree that, in the case of compensation, it has generally been held that it is the value of the economic benefit to the employee which determines the amount to be included in the income of the employee. *Commissioner* v. *Smith*, 324 U.S. 177; *Ward* v. *Commissioner*, 159 F. 2d 502 (C.A. 2, 1947), affirming a Memorandum Opinion of this Court. We also agree that section 403(c) provides for a conclusive measurement of the income received by petitioner herein based upon the amount paid by the employer for the annuity involved. For the reasons hereinafter shown, however, we do not find it necessary to pass upon the constitutionality of section 403(c) in the present action.

It is well established that an individual who claims himself harmed by a statute bears the burden of demonstrating how, as to him, the statute is unconstitutional. *Stockholders* v. *Sterling*, 300 U.S. 175; *Premier-Pabst Co.* v. *Grosscup*, 298 U.S. 226. The corollary is that one not prejudiced by enforcement of an act of the legislature cannot question its constitutionality. *Monamotor Oil Co.* v. *Johnson*, 292 U.S. 86; 11 Am. Jur. 748 et seq., section 111, and cases cited therein. See also *W. & K. Holding Corporation*, 38 B.T.A. 830, 847–8; *Manne* v. *Commissioner*, 155 F. 2d 304 (C.A. 8, 1946), affirming a Memorandum Opinion of this Court.

Petitioner takes the position that he received only the right to $50 per month for his life and that he is taxable only upon receipt of the monthly payments. Insofar as this constitutes an argument that there

was nothing which Congress could constitutionally tax upon the employer's purchase of the annuity for petitioner, it must be rejected. An annuity consists of a bundle of rights, including security, certainty of income, predictability of payments, and relief from concern over the management of investments. Cf. *Evans* v. *Rothensies*, 114 F. 2d 958 (C.A. 3, 1940). Moreover, petitioner does have rights of assignment under the annuity here involved. Cf. *Ward* v. *Commissioner*, *supra*. For these reasons, we are satisfied that the purchase of the annuity in question conferred a taxable economic benefit on the petitioner. *Ward* v. *Commissioner, supra; United States* v. *Drescher*, 179 F. 2d 863 (C.A. 2, 1950); *Renton K. Brodie, supra;* cf. *Oberwinder* v. *Commissioner*, 147 F. 2d 255 (C.A. 8, 1945); *Richard R. Deupree*, 1 T.C. 113.

Petitioner argues that even if there was some economic benefit conferred upon him as compensation by reason of his employer's purchase of the annuity, section 403(c) is unconstitutional in that it establishes a conclusive rule for includability in income of the total amount paid for the annuity. He asserts that income includability should rest on the value of what is received.

Petitioner has presented evidence that he was suffering from several maladies at the time of his retirement and continued to be so afflicted. He contends that since such annuities are issued without consideration of the health of the annuitant, the cost of the annuity here involved was greater than his health warranted. In essence, petitioner's argument is that his employer made a bad bargain in paying the full purchase price for an annuity on a sick man. There is nothing in the record, however, from which we can determine that the annuity was worth less than the amount the employer paid for it. *Elliott C. Morse, supra*. But see *Estate of John Halliday Denbigh*, 7 T.C. 387, in which such evidence was advanced. Thus, petitioner has not shown that section 403(c) is unconstitutional as applied to him. In addition, it has been held that the cost of an annuity is an extremely important element in determining the value of what was received. *United States* v. *Drescher, supra; Elliott C. Morse, supra.*

In support of the proposition that section 403(c) is unconstitutional petitioner cites *Heiner* v. *Donnan*, 285 U.S. 312. That case involved the constitutionality of section 302(c) of the Revenue Act of 1926, which provided in substance that the amount of any gift made within 2 years of death would be included in the estate as a gift in contemplation of death. The Court held the statute unconstitutional only after determining as a fact that the gift in question was not made in contemplation of death. In the instant case, petitioner has not shown that what he received as compensation had a value of less than the amount paid therefor by the employer.

On the facts presented, we hold that the amount paid by petitioner's employer for the annuity is includable in the gross income of petitioners for the year 1957, as determined by respondent. As in *Elliott C. Morse, supra,* we realize that this is a harsh result, but we are neither a legislative body nor a court of equity. We must take the law and the facts as we find them. That the result is severe may pain us, but it cannot alter our decision where unconstitutionality has not been clearly demonstrated.

*Decision will be entered for the respondent.*