KATRUSHKA J. PARSONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2689-62, 2376-63. Filed December 24, 1964.

*John M. Lynham*, for the petitioner.

*Joseph N. Ingolia*, for the respondent.

These proceedings involve deficiencies in petitioner's income tax for 1955, 1956, 1958, and 1959 in the respective amounts of $61,035.68, $90,825.54, $317,970.37, and $106,081.18. The petition alleges that respondent erred in determining such deficiencies in the income tax liability of petitioner who was a citizen of the United States, a resident of the Republic of the Philippines, and a member of a Philippine conjugal partnership during the taxable years in that no part of the income of the Philippine conjugal partnership from sources outside of the United States is taxable to petitioner, that it would be unconstitutional to tax such income to petitioner, and that the amount of such income was incorrectly computed. On February 14, 1964, petitioner's motion for a severance of issues was filed asking that the basic issue of the taxability of petitioner's interest in the income of the conjugal partnership between petitioner and her husband, a nonresident alien, under the laws of the Philippines be heard and decided first. This motion was heard on March 11, 1964, and an order was entered on that date granting the motion and setting the severed issue for trial on May 8, 1964, on which latter date this case was tried on the severed issue. Therefore, the sole question for decision herein is whether under the law of the Republic of the Philippines petitioner has an interest in the income of a conjugal partnership in the Republic of the Philippines which is taxable to her under the laws and Constitution of the United States.

### FINDINGS OF FACT

Some of the facts herein have been stipulated. We find these facts to be as stipulated and incorporate herein by this reference the stipulation filed by the parties and the exhibits identified therein and attached thereto.

Among the facts stipulated are that petitioner was and is a citizen of the United States and a resident of the Republic of the Philippines during the taxable years and at the present time, that she was married to a citizen and a resident of the Republic of the Philippines during the taxable years, that she filed individual income tax returns with the district director of internal revenue at Baltimore, Md., for the years in question in which she reported her own individual income from sources within the United States, that the deficiencies determined herein are predicated on her receipt of community income from sources outside of the United States, and that all of such income was paid and received outside of the United States.

At the time petitioner was married to her husband (Oct. 15, 1928), there was no marriage settlement agreement between them. The income here in question constituted the income of a conjugal partnership of gain existing under the laws of the Philippines and did not include any separate or paraphernal income of petitioner. Petitioner's husband, as representative of the conjugal partnership, filed the returns thereof and paid the taxes thereon as required and imposed by the law of the Republic of the Philippines.

One of the stipulated exhibits was the Civil Code of the Philippines. Among its more pertinent provisions are the following:

*Art. 112.*—The husband is the administrator of the conjugal property, unless there is a stipulation in the marriage settlements conferring the administration upon the wife. She may also administer the conjugal partnership in other cases specified in this Code.

    \*       \*       \*       \*       \*       \*       \*

*Art. 115.*—The wife manages the affairs of the household. She may purchase things necessary for the support of the family, and the conjugal partnership shall be bound thereby. She may borrow money for this purpose, if the husband fails to deliver the proper sum. \* \* \*

    \*       \*       \*       \*       \*       \*       \*

*Art. 119.*—The future spouses may in the marriage settlements agree upon absolute or relative community of property, or upon complete separation of property, or upon any other regime. In the absence of marriage settlements, or when the same are void, the system of relative community or conjugal partnership of gains as established in this Code, shall govern the property relations between husband and wife.

    \*       \*       \*       \*       \*       \*       \*

*Art. 135.*—All property brought by the wife to the marriage, as well as all property she acquires during the marriage, in accordance with article 148, is paraphernal.

*Art 136.*—The wife retains the ownership of the paraphernal property.

*Art 137.*—The wife shall have the administration of the paraphernal property, unless she delivers the same to the husband by means of a public instrument empowering him to administer it.

    \*       \*       \*       \*       \*       \*       \*

*Art. 138.*—The fruits of the paraphernal property form part of the assets of the conjugal partnership, and shall be subject to the payment of the expenses of the marriage.

The property itself shall also be subject to the daily expenses of the family, if the property of the conjugal partnership and the husband's capital are not sufficient therefor.

*Art. 139.*—The personal obligations of the husband can not be enforced against the fruits of the paraphernal property, unless it be proved that they redounded to the benefit of the family.

*Art. 140.*—A married woman of age may mortgage, encumber, alienate or otherwise dispose of her paraphernal property, without the permission of the husband, and appear alone in court to litigate with regard to the same.

    \*       \*       \*       \*       \*       \*       \*

*Art. 142.*—By means of the conjugal partnership of gains the husband and wife place in a common fund the fruits of their separate property and the income from their work or industry, and divide equally, upon the dissolution of the mar-

riage or of the partnership, the net gains or benefits obtained indiscriminately by either spouse during the marriage.

*Art. 143.*—All property of the conjugal partnership of gains is owned in common by the husband and wife.

\*  \*  \*  \*  \*  \*  \*

*Art. 146.*—Waiver of the gains or of the effects of this partnership during marriage cannot be made except in case of judicial separation.

\*  \*  \*  \*  \*  \*  \*

*Art. 147.*—The conjugal partnership shall be governed by the rules on the contract of partnership in all that is not in conflict with what is expressly determined in this Chapter.

\*  \*  \*  \*  \*  \*  \*

*Art. 153.*—The following are conjugal partnership property :

(1) That which is acquired by onerous title during the marriage at the expense of the common fund, whether the acquisition be for the partnership, or for only one of the spouses;

(2) That which is obtained by the industry, or work, or as salary of the spouses, or of either of them ;

(3) The fruits, rents or interests received or due during the marriage, coming from the common property or from the exclusive property of each spouse.

\*  \*  \*  \*  \*  \*  \*

*Art. 161.*—The conjugal partnership shall be liable for :

(1) All debts and obligations contracted by the husband for the benefit of the conjugal partnership, and those contracted by the wife, also for the same purpose, in the cases where she may legally bind the partnership ;

(2) Arrears or income due, during the marriage, from obligations which constitute a charge upon property of either spouse or of the partnership ;

(3) Minor repairs or for mere preservation made during the marriage upon the separate property of either the husband or the wife ; major repairs shall not be charged to the partnership ;

(4) Major or minor repairs upon the conjugal partnership property ;

(5) The maintenance of the family and the education of the children of both husband and wife, and of legitimate children of one of the spouses ;

(6) Expenses to permit the spouses to complete a professional, vocational or other course.

\*  \*  \*  \*  \*  \*  \*

*Art. 165.*—The husband is the administrator of the conjugal partnership.

\*  \*  \*  \*  \*  \*  \*

*Art. 167.*—In case of abuse of powers of administration of the conjugal partnership property by the husband, the courts, on petition of the wife, may provide for a receivership, or administration by the wife, or separation of property.

*Art. 168.*—The wife may, by express authority of the husband embodied in a public instrument, administer the conjugal partnership property.

*Art. 169.*—The wife may also by express authority of the husband appearing in a public instrument, administer the latter's estate.

*Art. 170.*—The husband or the wife may dispose by will of his or her half of the conjugal partnership profits.

*Art. 171.*—The husband may dispose of the conjugal partnership property for the purposes specified in articles 161 and 162.

*Art. 172.*—The wife cannot bind the conjugal partnership without the husband's consent, except in cases provided by law.

*Art. 173.*—The wife may, during the marriage, and within ten years from the transaction questioned, ask the courts for the annulment of any contract of the

husband entered into without her consent, when such consent is required, or any act or contract of the husband which tends to defraud her or impair her interest in the conjugal partnership property. Should the wife fail to exercise this right, she or her heirs, after the dissolution of the marriage, may demand the value of property fraudulently alienated by the husband.

*Art. 174.*—With the exception of moderate donations for charity, neither husband nor wife can donate any property of the conjugal partnership without the consent of the other.

*Art. 175.*—The conjugal partnership of gains terminates:

(1) Upon the death of either spouse;

(2) When there is a decree of legal separation;

(3) When the marriage is annulled;

(4) In case of judicial separation of property under article 191.

\*       \*       \*       \*       \*       \*       \*

*Art. 179.*—Upon the dissolution of the conjugal partnership, an inventory shall be formed, but such inventory shall not be necessary:

(1) If, after the dissolution of the partnership, one of the spouses should have renounced its effects and consequences in due time; or

(2) When separation of property has preceded the dissolution of the partnership.

\*       \*       \*       \*       \*       \*       \*

*Art. 181.*—The inventory having been completed, the paraphernal property shall first be paid. Then, the debts and charges against the conjugal partnership shall be paid.

*Art. 182.*—The debts, charges and obligations of the conjugal partnership having been paid, the capital of the husband shall be liquidated and paid to the amount of the property inventoried.

*Art. 183.*—The deductions from the inventoried property having been made as provided in the two preceding articles, the remainder of said property shall constitute the credit of the conjugal partnership.

\*       \*       \*       \*       \*       \*       \*

*Art. 185.*—The net remainder of the conjugal partnership of gains shall be divided equally between the husband and the wife or their respective heirs, unless a different basis of division was agreed upon in the marriage settlements.

\*       \*       \*       \*       \*       \*       \*

*Art. 190.*—In the absence of an express declaration in the marriage settlements, the separation of property between spouses during the marriage shall not take place save in virtue of a judicial order.

*Art. 191.*—The husband or the wife may ask for the separation of property, and it shall be decreed when the spouse of the petitioner has been sentenced to a penalty which carries with it civil interdiction, or has been declared absent, or when legal separation has been granted.

In case of abuse of powers of administration of the conjugal partnership property by the husband, or in case of abandonment by the husband, separation of property may also be ordered by the court, according to the provisions of articles 167 and 178, No. 3.

In all these cases, it is sufficient to present the final judgment which has been entered against the guilty or absent spouse.

The husband and the wife may agree upon the dissolution of the conjugal partnership during the marriage, subject to judicial approval. All the creditors of the husband and of the wife, as well as of the conjugal partnership, shall be notified of any petition for judicial approval of the voluntary dissolution of the conjugal partnership, so that any such creditors may appear at the hearing

to safeguard his interests. Upon approval of the petition for dissolution of the conjugal partnership, the court shall take such measures as may protect the creditors and other third persons.

After dissolution of the conjugal partnership, the provisions of articles 214 and 215 shall apply. The provisions of this Code concerning the effect of partition stated in articles 498 to 501 shall be applicable.

\*     \*     \*     \*     \*     \*     \*

*Art. 196.*—With the conjugal partnership subsisting, the administration of all classes of property in the marriage may be transferred by the courts to the wife:

(1) When she becomes the guardian of her husband;

(2) When she asks for the declaration of his absence;

(3) In case of civil interdiction of the husband.

The courts may also confer the administration to the wife, with such limitations as they may deem advisable, if the husband should become a fugitive from justice or be in hiding as a defendant in a criminal case, or if, being absolutely unable to administer, he should have failed to provide for administration.

*Art. 197.*—The wife to whom the administration of all the property of the marriage is transferred shall have, with respect to said property, the same powers and responsibility which the husband has when he is the administrator, but always subject to the provisions of the last paragraph of the preceding article.

"Title IX—Partnership" of the Civil Code of the Philippines contains the following pertinent provisions:

*Art. 1768.*—The partnership has a juridical personality separate and distinct from that of each of the partners, \* \* \*

\*     \*     \*     \*     \*     \*     \*

*Art. 1811.*—A partner is co-owner with his partners of specific partnership property.

The incidents of this co-ownership are such that:

(1) A partner, subject to the provisions of this Title and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners;

(2) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property;

(3) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws;

(4) A partner's right in specific partnership property is not subject to legal support under article 291.

*Art. 1812.*—A partner's interest in the partnership is his share of the profits and surplus.

Another stipulated exhibit [1] was the National Internal Revenue Code of the Philippines. Section 45(d), chapter VI, title II, thereof, provides as follows:

(d) *Husband and wife.*—In the case of married persons, whether citizens, resident or non-resident aliens, only one consolidated return for the taxable year

---

[1] This exhibit was admitted over respondent's objection that it was irrelevant and immaterial. Respondent's objection was properly overruled. *The Asiatic Prince,* 108 F. 287, 290.

shall be filed by either spouse to cover the income of both spouses; but where it is impracticable for the spouses to file one consolidated return, each spouse may file his separate return of income, but the returns so filed shall be consolidated for the purpose of the tax prescribed under this Title.

Petitioner introduced into evidence section 180 of the regulations under the National Internal Revenue Code of the Philippines [2] which provides, *inter alia*, as follows:

For each calendar year, every person, whether married or single, having a gross income from all sources of ₱1,800 or over, including dividends, excepting stock dividends, must make a return of income although the tax has been paid at the source and the return shows no tax liability. Whether or not an individual is the head of a family or has dependents is immaterial in determining his liability to render a return. The husband shall include in his return the income derived not only from his services, labor, or industry or the income derived from the conjugal partnership but also the income of the wife derived from her industry or labor as well as that derived from her separate, total, or paraphernal property. Where, however, the filing of one consolidated return is impracticable, married persons may file separate returns, but the income declared in such returns will be consolidated and the tax computed on such consolidated income.

There were admitted into evidence the following opinions of the courts of the Philippines, which are incorporated herein by this reference: *Madrigal and Paterno* v. *Rafferty*, 38 Philippine 414 (1918); *Ossorio* v. *Posadas*, 56 Philippine 748 (1929); *Gibbs* v. *Government of the Philippine Islands*, 59 Philippine 293 (1933); *Ansaldo* v. *Sheriff of Manila*, 64 Philippine 115 (1937); *Rosete* v. *Provincial Sheriff of Zambales*, 50 Off. Gaz. 3579 (1954); and *Planas* v. *Philippine National Bank*, 57 Off. Gaz. 1055 (1960).

Extracts from two treatises on the law of the Philippines, the authors of which were shown by testimony on the stand to be recognized as competent authorities in that jurisdiction, were admitted into evidence [3] and are incorporated herein by this reference.

OPINION

KERN, *Judge:* Pursuant to the order of Chief Judge Tietjens entered herein on March 11, 1964, there is now presented for our decision the question of whether petitioner, an American citizen and a member of a conjugal partnership of gains of the Philippines where she resides, has such interests in the income of the conjugal partnership as to render her taxable on one-half of such income under the Internal Revenue Code of the United States.

What those interests are is determined by the law of the Philippines.

---

[2] See fn. 1.

[3] Respondent's objections to the admission of these extracts on the ground that they were hearsay were overruled. A subsequent motion to strike them from the record is denied. See 6 Wigmore, Evidence, sec. 1697 (3d. ed. 1940, 1962 supp.).

Whether those interests are such as to render petitioner taxable on one-half of the income of the conjugal partnership is to be determined under the law of the United States. As the Supreme Court said in *Helvering* v. *Stuart*, 317 U.S. 154, 162, "Once rights are obtained by local law, whatever they may be called, these rights are subject to the federal definition of taxability." See also *Morgan* v. *Commissioner*, 309 U.S. 626.

The law of the Republic of the Philippines, being foreign law,[4] must be proved. See *Columbian Carbon Co.*, 25 B.T.A. 456. In the instant cases there have been introduced into evidence the Code of the Philippines and a number of decisions of the Philippine courts having to do with the rights of spouses who are members of conjugal partnerships. We have set out verbatim in our findings many of the Code sections pertinent to our inquiry, and we have carefully read and considered the decisions of the Philippine courts, several of which have been considered by the Courts of Appeals for the Ninth and Fourth Circuits and by this Court in *Commissioner* v. *Cadwallader*, 127 F. 2d 547 (1940), affirming a Memorandum Opinion of this Court, and *Helvering* v. *Campbell*, 139 F. 2d 865 (1944), affirming Memorandum Opinions of this Court.[5]

In *Helvering* v. *Campbell*, *supra*, it was held that the interests of spouses in the property of a Philippine conjugal partnership were not substantially different from those of spouses in community property under the laws of the State of Washington dealt with by the Supreme Court in *Poe* v. *Seaborn*, 282 U.S. 101, and accordingly only one-half of the income of the conjugal partnership is taxable under the income tax statutes of the United States to each of the spouses. In the *Campbell* case [6] both this Court and the Court of Appeals for the Fourth Circuit relied heavily on *Commissioner* v. *Cadwallader*, *supra*, while in the latter case both this Court and the Court of Appeals for the Ninth Circuit relied heavily on *Gibbs* v. *Government of the Philippine Islands*, *supra*. See also *Mary A. Marsman*, 18 T.C. 1, affirmed and modified on other questions 205 F. 2d 335 and 216 F. 2d 77.

Petitioner argues that the instant cases are distinguishable from the *Nell* and *Campbell* cases considered by the Court of Appeals in *Helvering* v. *Campbell*, *supra*. The following quotations from petitioner's reply brief indicate her argument on this point:

These issues are confused by Respondent in his original brief. *Nell* and *Campbell* hold only that the wife could file a separate return of Philippines conjugal

---

[4] The Republic of the Philippines became an independent nation on July 4, 1946, 48 Stat. 45, 48 U.S.C. sec. 1232 *et seq.*; Proc. No. 2695, 60 Stat. 1352 (1946).

[5] We perceive no controlling difference between the present Code provision and those in force at the time of the *Cadwallader* and *Campbell* cases.

[6] The opinion of the Court of Appeals in this case considered the appeals from two Memorandum Opinions of this Court, one in the case of *Oscar F. Campbell* and another in the case of *Edward J. Nell*.

income if she so desired. They do not hold that she is *required* to file a return, and they do not hold that she is liable for the tax. No such issues were before the court in those cases.

\*  \*  \*  \*  \*  \*  \*

Respondent contends that his position is supported by *Poe* v. *Seaborn*, but that case and all of the cases subsequently decided under it, including *Nell* and *Campbell*, stand for no more than the right of the wife to file a separate return if she should elect to do so. Note that in *I.T. 3916* the ruling is "that a husband and wife who are United States citizens and who are domiciled in the Philippine Islands may each report in a separate Federal income tax return one-half of the community income." Nothing whatever is said about the wife's tax liability.

\*  \*  \*  \*  \*  \*  \*

None of the authorities cited by the Respondent, including the statutes and regulations, provide any support for the tax asserted, and perhaps it is pertinent to observe here that although *Poe* was decided in 1930 and *I.T. 3916* was issued in 1948, this is the first time, as far as Petitioner has been able to determine, that the Respondent has asserted a tax on community income directly against the wife where she has filed no return of such income.

We are unable to agree with this argument of petitioner. The right of a wife to report one-half of the conjugal (or community) income depends on whether she has such interests therein as would render such income (or a part thereof) taxable to her. If it is taxable to her, she has not only the right to report it but also the obligation. See *United States* v. *Malcom*, 282 U.S. 792. We know of no authority and petitioner has cited none for any proposition that a wife in community property States may elect not to report her half of community income. Petitioner merely cites the fact that so far as her counsel has been able to determine, respondent has never before "asserted a tax on community income directly against the wife where she has filed no return of such income." In view of the obvious tax advantage for many years of filing a return for each spouse, such a fact, if it be a fact, is not surprising. In any event, the nonaction of the respondent in this respect cannot be considered as authority for the proposition that he has no power to act.

While petitioner has sought, unsuccessfully in our opinion, to distinguish the issue involved in these cases from that involved in *Helvering* v. *Campbell*, *supra*, the main thrust of her argument is to the effect that the law of the Philippines during the taxable years as proved by the evidence adduced in the instant cases was that the interest of a wife in the property of a conjugal partnership was not vested, was inchoate, and constituted a mere expectancy as held in *Madrigal and Paterno* v. *Rafferty*, *supra;* that accordingly, and on the authority of that case and *United States* v. *Robbins*, 269 U.S. 315, no part of the income of a conjugal partnership is taxable to the wife; and that the case of *Gibbs* v. *Government of the Philippine Islands*, *supra*, relied upon by the Courts of Appeals for the Ninth and Fourth Circuits and by us in the *Cadwallader* and *Campbell* cases, can no longer be con-

sidered as stating the law of the Philippines in view of the later decisions of the Philippine courts in *Ansaldo* v. *Sheriff of Manila, supra, Rosete* v. *Provincial Sheriff of Zambales, supra,* and *Planas* v. *Philippine National Bank, supra,* which reiterate the characterization of the wife's interest in the property of a conjugal partnership made in the earlier case of *Madrigal and Paterno* v. *Rafferty, supra.* In support of this argument petitioner points to a similar characterization of the wife's interest in the property of a conjugal partnership by the two treatises admitted in evidence and by one of the two expert witnesses testifying at the trial of these cases, and also points to the practice of taxing all of the conjugal partnership income to the husband under the statutes and regulations of the Philippines.

With regard to the testimony of the expert witness and to the opinions expressed by the authors of the treatises relating to rights of a wife to the property of a conjugal partnership, it is obvious that that testimony and those opinions were based on interpretations of the Philippine Code and the decisions of the Philippine courts which have been introduced in evidence. Those having been duly proved it is the function of this Court to make its own conclusion as to the law of the Philippines without being bound by the opinions of others even though the evidence of their opinions is admissible. See *Tarbell* v. *Grand Trunk Ry. Co.,* 96 Vt. 170, 118 Atl. 484, 34 A.L.R. 1444, and cases cited therein.

Similarly, even though the Philippine Revenue Code and regulations may be admissible as indicating "departmental regulations" and "administrative construction" relevant to the existence of property interests arising under foreign law, see *The Asiatic Prince,* 108 Fed. 287, 290, the responsibility for making a conclusion as to "the federal definition of taxability" with regard to those interests is upon this Court and it must do so by making what it considers to be a proper construction of the taxing statutes of this country with guidance from the opinions of the courts of the United States.

We turn now to petitioner's contention that the three Philippine cases named above which were decided by the courts of that country after the decision of *Gibbs* v. *Government of the Philippine Islands, supra,* invalidate that case as a statement of the Philippine law. Those cases involved the title of the spouses to specific items of conjugal property with reference to the claims of judgment creditors of an individual spouse during times prior to the termination and liquidation of the conjugal partnership. The *Gibbs* case involved the title to items of conjugal property at the time of the termination of the conjugal partnership, without debts, by reason of the wife's death. That case held:

Under the provisions of the Civil Code and the jurisprudence prevailing here, the wife, upon the acquisition of any conjugal property, becomes immediately

*vested with an interest and title therein equal to that of her husband*, subject to the power of management and disposition which the law vests in the husband. Immediately upon her death, if there are no obligations of the decedent, as is true in the present case, her share in the conjugal property is transmitted to her heirs by succession. [Emphasis supplied.] [7]

None of the three cases decided after the *Gibbs* case made any reference to the latter case by way of reversal or otherwise, but used characterizing adjectives such as "inchoate" and "a mere expectancy" with regard to the property rights of the spouses to specific items of conjugal property prior to the termination of the conjugal partnership and the liquidation of its debts. One of them cited with approval the *Madrigal and Paterno* case.

Since none of the three cases decided since the *Gibbs* case reverses the latter case and since the matters decided by those cases are not in conflict with either the decision or the opinion in the *Gibbs* case, we are unable to agree with petitioner's argument that the *Gibbs* case has been invalidated as a statement of Philippine law to the effect that, upon the acquisition of any conjugal property, the wife immediately possesses the same interest or title thereto which the husband has, subject to the power of management and disposition placed in the husband by the Philippine Code, and, if the conjugal partnership is terminated by her death and if there are no outstanding debts of the partnership, her share in the conjugal property is transmitted to her heirs by succession. In the opinion the court uses the verb "vest" twice, first to say that the wife becomes vested with "an interest and title * * * equal to that of the husband," and, second, to say that it is subject to powers "which the law vests in the husband." It is apparent to us that the court means that the wife acquires or possesses an immediate right to conjugal property equal to that of the husband subject to rights of management which the husband concurrently acquires or possesses. In our opinion this use of the verb "vest" is similar to that of the Supreme Court of the United States in *Poe* v. *Seaborn, supra* at 111, where that Court stated its conclusion that "the wife has, in Washington, a vested property right in the community property, equal with that of her husband." In neither case did the court hold that an unqualified title to a specific item of property of a marital community or conjugal partnership was vested in the wife during the existence of the community or partnership so as to render it subject to execution by her individual creditors or to make it possible for her to alienate it by a separate conveyance. In the case of *Poe* v. *Seaborn, supra*, the holding was that the wife possessed such rights and interests with regard to community property as to make

---

[7] In *Estate of Jose Simon*, 40 B.T.A. 651, 652, we held that under the Spanish Civil Code the property of a Spanish conjugal partnership belonged equally to the husband and the wife at the time of the husband's death and the wife had a vested interest in her one-half of that property *at that time.*

clear that she possessed and owned a property right therein equal to that of the husband.

Based upon all of the evidence of record herein, including not only the Philippine Code and decisions of the Philippine courts but also the National Internal Revenue Code of the Philippines, the regulations thereunder, the treatises referred to in our findings, and the oral testimony of the expert witnesses, our conclusions [8] as to the pertinent law of the Philippines, expressed with the minimal use of words of art, are as follows:

Generally speaking and under the circumstances of the instant cases the earnings of each spouse of an existing marriage become, when realized, the property or capital of a conjugal partnership composed of both spouses. Such property or capital thereupon belongs to or is owned in common by the spouses *qua* partners subject to the prior rights of partnership creditors and subject to the power of the husband to administer it for the benefit of the partnership. Otherwise each spouse has an immediate interest equal to that of the other with regard to the net of the property or capital of the conjugal partnership in excess of the debts properly chargeable to the partnership, but neither spouse has the ownership of any specific item or items of such property or capital in whole or in part, until the termination of the conjugal partnership and the liquidation of its debts. Pending the termination of the conjugal partnership the wife possesses certain rights with regard to the management and enjoyment of its property, among which are the right to administer it under certain circumstances in place of the husband, the right to protect her interests therein before the courts against every "abuse of powers of administration * * * by the husband," the right to annul any contract made by the husband without her consent "which tends to * * * impair her *interest in the conjugal partnership property*" (emphasis supplied), the right to obtain a separation of the conjugal partnership property

---

[8] The task of an American judge, reared in the common law, in fully comprehending and then formulating the concepts, both explicit and implicit, relating to property rights in the Philippines, a country where the civil law prevails and which are created by the provisions of a code having historical antecedents in some 300 years of Spanish law with a thin (and partial) veneer of common law phraseology applied during the recent and comparatively short period of American occupation and influence, is not without difficulties. One of the difficulties is the fear which the judge has that the majority of the lawyers, judges, and writers of treatises of that country, which is now happily an independent nation, being reared in the civil law and having Spanish as their first language, may have used the English words of common law phraseology in ways which did not adequately convey the precise meaning of civil law concepts.

In this connection it is noted that in 41 Philippine (which contains at p. 713 the case of *Amparo Nable Jose* v. *Mariano Nable Jose*, cited in several of the opinions admitted into evidence) there appear five eulogies in memory of a deceased chief justice. Of these five addresses, four are published as "translated" into English, including one by the then chief justice. It is also noted that the distinguished former chief justice of the Philippine Supreme Court, who testified as one of the expert witnesses at the trial herein, expressed himself so hesitantly as to give the impression that he was thinking in Spanish and speaking in English.

under certain circumstances, and the right to spend the capital of the partnership for the support of the family or to borrow for this purpose. Upon the termination of the conjugal partnership she has the right to receive, if living, one-half of the net capital of the partnership, and, if such termination occurs as a result of her death, to pass to her heirs such one-half of the net capital. If there are no partnership debts at the time of her death her one-half interest in the assets of the partnership passes by succession to her heirs.

We are unable to detect any substantial difference between the property rights of a wife who is a member of a Philippine conjugal partnership and those of a wife under the laws of the State of Washington which were considered by the Supreme Court in Poe v. Seaborn, supra. In that case it was held that the rights of the wife in the property and income of a marital community were such as to render one-half of the community income taxable to the wife and to permit the wife to file a separate return of such income under the taxing statutes of the United States. Since it is our view, as already stated, that if a wife has the privilege of filing such a return she has the obligation of doing so, it is our conclusion that petitioner is taxable as determined by respondent on one-half of the income of the Philippine conjugal partnership.[9]

It is also our opinion that the rights of petitioner as a member of a Philippine conjugal partnership are such that a Federal income tax levied against her on one-half of its income is constitutional. See Charles Wilson, 39 T.C. 362, 366, 367; Burnet v. Wells, 289 U.S. 670, 678, 679.

Having decided the issue before us in favor of respondent, an order will be entered herein setting these cases down for trial in due course on the other issues presented by the pleadings herein.

---

[9] It is apparent from our discussion that we still consider the ultimate holding in Helvering v. Campbell, 139 F. 2d 865, to be correct. Even if we had doubts as to its rationale our views would be expressed in a paraphrase of a statement made by Judge Sternhagen in his opinion in the unreported case of Edward J. Nell (see fn. 6) as follows: "This proceeding is reviewable by the same court as decided * * * [Helvering v. Campbell], and if the foundations of that decision are to be reconsidered, that can more appropriately be done by that Court than here."